# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | | |
|---|---|---|
| VOLUNTEER AG PRODUCTS LLC, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| SOUTHEASTERN PRODUCE LLC; UTOPIA FARMS LLC; CH ROBINSON COMPANY, INC. t/a ROBINSON FRESH; BRIAN H. TURNER; BRIAN J. SANDERS; and RONALD W. CARTER, each individually, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | | |

## VERIFIED COMPLAINT

For its Verified Complaint, the Plaintiff respectfully states as follows:

## INTRODUCTION

Defendant CH Robinson, a multi-national marketer and distributor of fresh fruits and vegetables, did business with two watermelon farms in Florida, defendants Southeastern and Utopia Farms, during the 2020/2021 Florida winter watermelon season (i.e., September of 2020 to April of 2021) and in prior seasons. Watermelon crops in Florida are generally ready for harvest three months from planting.

CH Robinson is a well-known and highly experienced watermelon supplier, and it manages and controls its own winter watermelon program in Florida by partnering with multiple watermelon growers. During the 2020/2021 winter

watermelon season, CH Robinson partnered with Utopia Farms and Southeastern Produce to achieve the volume of watermelon it needed for its 2020/2021 winter watermelon program.

Typically, CH Robinson would (i) provide its farming partners upfront cash and/or materials (e.g., seeds, seedlings, fertilizer, plant bundles) to enable production; (ii) CH Robinson would develop a planting schedule for its growers to follow; (iii) the growers would take CH Robinson's planting schedule and apply their land, farm equipment, labor, and farming knowledge and skill to the watermelon crop from planting through harvest; and (iv) CH Robinson would then market and sell the resulting watermelons to its customers.

Both Utopia Farms and Southeastern Produce became insolvent before the 2020/2021 winter watermelon season in Florida. CH Robinson knew this, as both Utopia Farms and Southeastern Produce owed CH Robinson and other creditors significant debts that Utopia Farms and Southeastern Produce could not pay. CH Robinson knew that the only way that these financially distressed growers could pay any of their outstanding debts to CH Robinson was for Utopia Farms and Southeastern Produce to continue to operate by growing watermelons that CH Robinson could sell in subsequent seasons (e.g., the 2020/2021 winter watermelon season). To grow watermelons for the 2020/2021 winter watermelon season, both growers would need watermelon seeds or juvenile watermelon plants.

Prior to the 2020/2021 winter watermelon season, both Utopia Farms and Southeastern Produce failed to pay their seed providers and could not independently acquire seed for the upcoming 2020/2021 winter watermelon season, which CH Robinson also knew.  In fact, both Utopia Farms and Southeastern Produce lacked the necessary cash to purchase seeds or seedlings, and no seed providers would provide them seeds on credit.  CH Robinson knew that for Utopia Farms and Southeastern Produce to repay any of the outstanding debt each owed to CH Robinson, CH Robinson would have to either purchase the seed itself for Utopia Farms and Southeastern Produce, or use CH Robinson's own reputation and creditworthiness to broker a deal to get the growers the necessary seeds.

Plaintiff Volunteer Ag. is a provider of watermelon seed.  CH Robinson contacted Volunteer Ag. and indicated CH Robinson was working with both Utopia Farms and Southeastern Produce to supply its 2020/2021 "Florida Watermelon Program." CH Robinson directly negotiated the purchase and delivery of seeds from Volunteer to both Utopia Farms and Southeastern Produce in the same set of communications, as though the entire Florida Watermelon Program were controlled and conducted from a single nexus or nerve center in CH Robinson.  Volunteer Ag., having trepidation about delivering the seeds to two farms it feared were either insolvent or so thinly capitalized that they were a high credit risk, requested assurances from CH Robinson, Utopia Farms, and Southeastern Produce, that CH

Robinson would cover the seed costs if Utopia Farms and Southeastern Produce could not.  CH Robinson agreed; Utopia Farms agreed; and Southeastern Produce agreed.

CH Robinson specifically represented that it would guaranty payment to Plaintiff of the cost of the seed if either or both Utopia Farms and Southeastern Produce failed to pay.  Utopia Farms and Southeastern Produce both signed agreements stating that CH Robinson would pay funds owing to the growers first to Volunteer, further demonstrating to Volunteer that the partnership or joint venture between CH Robinson and the farms was of such a nature that Volunteer Ag.'s agreement to sell seeds was binding on all three.  Without these material and false representations by CH Robinson, Volunteer Ag. never would have delivered seed or seedlings to Utopia Farms or Southeastern Produce, because those two entities were not credit worthy and were likely judgment proof by way of poverty, and each defendant knew it.

What transpired was quite different.  CH Robinson controlled, conducted, and coordinated delivery of the seed from Volunteer Ag. to both Utopia Farms and Southeastern Produce.   Utopia and Southeastern Produce then produced the watermelons that CH Robinson acquired, distributed, and sold primarily for its own benefit.  CH Robinson took the cash proceeds, and on information and belief, satisfied its prior debts from previous seasons with Utopia Farms and Southeastern

Produce from proceeds from the 2020/2021 winter watermelon season.  In direct abnegation of the Defendants' representations, the growers and CH Robinson did not pay Volunteer Ag. for the seed or seedlings, and CH Robinson did not indemnify or otherwise make good on its guaranty to Volunteer Ag.  The scheme that CH Robinson executed resulted in a transfer of debt from CH Robinson to Volunteer Ag. of not less than $1,361,108.10.  This suit seeks to recover Plaintiff's damages for the seeds it delivered to Defendants but for which Plaintiff was never paid.

## **THE PARTIES**

1.  Volunteer Ag Products LLC ("*Plaintiff*" and "*Volunteer*") is a Tennessee limited liability company with offices located in Greenfield, Tennessee 38230.

2.  At all times relevant hereto, Plaintiff was engaged, directly or indirectly, in the business of purchasing and/or selling fruit and vegetable seeds, seedling transplants, organic fertilizer, and other similar agricultural or farming inputs and services (hereinafter collectively "*Seeds*").

3.  Defendants are:

    (a)  Southeastern Produce LLC ("*Southeastern*") is a Florida limited liability company with its principal place of business located at LaBelle, Florida 33975.  At all times relevant to this action, Southeastern:

(i)     was administratively dissolved by the Florida Secretary of State for failing to file proper annual reports on September 25, 2020 (demonstrating that Southeastern was formed on December 26, 2019, and, thereafter, never filed the statutorily required annual reports);

(ii)    operated, conducted, and otherwise was engaged in or carried on the business of raising, cultivating, marketing, and selling perishable agricultural commodities, specifically watermelon (also hereinafter referred to as "*Produce*") in interstate commerce;

(iii)   purchased and received watermelon Seeds in Florida from or on behalf of Plaintiff;

(iv)    wrongfully refused or failed to pay Plaintiff's invoices to Southeastern for the watermelon Seeds;

(v)     utilized Plaintiff's watermelon Seeds to grow, raise, and cultivate a watermelon crop during the 2020/2021 Florida watermelon season for sale and distribution to third parties;

(vi)   worked with C.H. Robinson as a joint venture partner to profitably grow and sell a watermelon crop to third parties inside and outside the State of Florida, and failed to use the proceeds of any such sales to pay Plaintiff;

(vii)   authorized and directed CH Robinson to utilize the proceeds of its sale of Southeastern's watermelon crop to pay Plaintiff's unpaid Seed invoices in whole or in part;

(viii)   utilized its relationship with CH Robinson to induce Plaintiff to extend credit to Southeastern; and

(ix)   operated in an insolvent condition, was not creditworthy, and lacked the ability to pay Plaintiff's invoices for the watermelon seeds it acquired from Plaintiff.

(b)   Brian J. Sanders ("*Sanders*"), an individual and resident of Florida, is or was an officer, member, and/or manager of Southeastern and in a position to exercise dominion and control over Southeastern at all times relevant to this action and otherwise participated in the tortious conduct or other wrongs set

forth herein. Sanders is listed as a "Manager" on Southeastern's Articles of Organization filed with the Office of the Secretary of State of Florida on December 26, 2019. Sanders signed Plaintiff's payment agreement on behalf of Southeastern.

(c)    Ronald W. Carter ("*Carter*"), an individual and resident of Alabama, is or was an officer, member, and/or manager of Southeastern and in a position to exercise dominion and control over Southeastern at all times relevant to this action and otherwise participated in the tortious conduct or other wrongs set forth herein. Carter is listed as a "Manager" on Southeastern's Articles of Organization filed with the Office of the Secretary of State of Florida on December 26, 2019.

(d)    Utopia Farms II, LLC a/k/a Utopia Farms ("*Utopia Farms*") is a Florida limited liability company with its principal place business located in Palmetto, Florida 34221. At all times relevant to this action, Utopia Farms:

(i)    operated, conducted, and otherwise was engaged in or carried on the business of raising, cultivating, marketing, and selling perishable agricultural

commodities, specifically watermelon in interstate commerce;

(ii)     purchased and received watermelon Seeds in Florida from or on behalf of Plaintiff;

(iii)    wrongfully refused or failed to pay Plaintiff's invoices to Utopia Farms for the watermelon Seeds;

(iv)    utilized Plaintiff's watermelon Seeds to grow, raise, and cultivate a watermelon crop during the 2020/2021 Florida watermelon season for sale and distribution to third parties;

(v)     worked with C.H. Robinson as a joint venture partner to profitably grow and sell a watermelon crop to third parties inside and outside the State of Florida and failed to use the proceeds of any such sales to pay Plaintiff;

(vi)    authorized and directed CH Robinson to utilize the proceeds of its sale of Utopia Farms' watermelon crop to pay Plaintiff's unpaid Seed invoices in whole or in part;

(vii)  utilized its relationship with CH Robinson to induce Plaintiff to extend credit to Utopia Farms; and

(viii)  operated in an insolvent condition, was not creditworthy, and lacked the ability to pay Plaintiff's invoices for the watermelon Seeds it purchased from Plaintiff.

(e)  Brian H. Turner ("*Turner*"), an individual and resident of Florida, is or was an officer, member, and/or manager of Utopia Farms and in a position to exercise dominion and control over Utopia Farms at all times relevant to this action and otherwise participated in the tortious conduct or other wrongs set forth herein.  Turner is listed as a "Member" and a "Manager" on the Utopia Farms' 2021 Florida Limited Liability Company Annual Report filed with the Office of the Secretary of State of Florida on February 22, 2021.   Turner signed Plaintiff's payment agreement on behalf of the Utopia Farms.

(f)  C.H. Robinson Company, Inc. t/a Robinson Fresh ("*CH Robinson*"), is a Minnesota corporation with principal place of business located in Eden Prairie, MN 55347 and with four (4) branch offices located throughout the State of Florida (e.g.,

Sunrise, FL, Tampa, FL, Miramar, FL, and Liberty Lake, FL).
At all times relevant hereto CH Robinson:

(i)     was engaged in the business of purchasing and/or selling Produce in wholesale or jobbing quantities and, therefore, is a "dealer" of Produce as defined by the Perishable Agricultural Commodities Act, 1930, *as amended*, 7 U.S.C. §§ 499a-499t (2019) ("*PACA*");

(ii)    operated its business under a valid USDA issued PACA License, which the USDA has identified as License No. 20001042;

(iii)   marketed, sold, and distributed watermelon crops to third parties during the 2020/2021 Florida watermelon season for both Southeastern and Utopia Farms;

(iv)    operated as joint venturer or partner of Southeastern for the common purpose of growing and selling a watermelon crop during the 2020/2021 Florida watermelon season for a profit;

(v)     worked, on behalf of itself and Southeastern, directly with Plaintiff to order the Seeds needed for Southeastern's 2020/2021 Florida watermelon program;

(vi)    on behalf of itself and Southeastern, planned, managed, influenced, and controlled the planting (i.e., Seed varieties), production, and harvest related timelines for Southeastern's 2020/2021 Florida watermelon season;

(vii)   served as the exclusive marketer for the entire watermelon crop grown on Southeastern's farm during the 2020/2021 Florida watermelon season;

(viii)  upon information and belief, received Southeastern's watermelon crop on an FOB open basis, which is to say C.H. Robinson purchased watermelon from Southeastern without fixed price terms;

(ix)    utilized open price terms with respect to its watermelon transactions with Southeastern to provide a means for the joint venture partners to share profits and losses;

(x)     utilized the open price nature of its watermelon transactions with Southeastern to direct or control what Southeastern charged or invoiced CH Robinson for watermelon;

(xi)    contributed, *inter alia*, capital, watermelon marketing expertise, watermelon production knowledge, and crop

management expertise to its joint venture or partnership with Southeastern to grow and sell watermelons for a profit during the 2020/2021 Florida watermelon season;

(xii)   received, *inter alia*, contributions of labor, farmland access and use rights, watermelon farming knowledge and skill, and farming equipment from Southeastern in connection with its joint venture or partnership with Southeastern to grow and sell watermelons for a profit during the 2020/2021 Florida watermelon season;

(xiii)  shared control with Southeastern over the watermelon crop grown by Southeastern during the 2020/2021 Florida watermelon season by, *inter alia*, directing the amount, variety, and delivery schedule for the Seeds purchased from Plaintiff and dictating Southeastern's watermelon planting and harvesting schedule;

(xiv)  upon information and belief, CH Robinson would direct Southeastern to charge or invoice CH Robinson below market price for watermelon during the 2020/2021 Florida watermelon season as a means to allocate profits and losses;

(xv)   upon information and belief, did not receive watermelon from Southeastern in exchange for a commission reflecting a fixed percentage of the market value of the watermelon CH Robinson sold to its customers;

(xvi)   operated as joint venturer or partner of Utopia Farms for the common purpose of growing and selling a watermelon crop during the 2020/2021 Florida watermelon season for a profit;

(xvii)   worked, on behalf of itself and Utopia Farms, directly with Plaintiff to order the Seeds needed for Utopia Farms' 2020/2021 Florida watermelon program;

(xviii)  on behalf of itself and Utopia Farms, planned, managed, influenced, and controlled the planting (i.e., Seed varieties), production, and harvest related timelines for Utopia Farms' 2020/2021 Florida watermelon season;

(xix)   served as the exclusive marketer for the entire watermelon crop grown on Utopia Farms' farm during the 2020/2021 Florida watermelon season;

(xx)   upon information and belief, received Utopia Farms' watermelon crop on an FOB open basis, which is to say

C.H. Robinson purchased watermelon from Southeastern without fixed price terms;

(xxi) utilized open price terms with respect to its watermelon transactions with Utopia Farms to provide a means for the joint venture partners to allocate profits and losses;

(xxii) utilized the open price nature of its watermelon transactions with Utopia Farms to direct or control what Utopia Farms charged or invoiced CH Robinson for watermelon;

(xxiii) contributed, *inter alia*, capital, watermelon marketing expertise, watermelon production knowledge, and crop management expertise to its joint venture or partnership with Utopia Farms to grow and sell watermelons for a profit during the 2020/2021 Florida watermelon season;

(xxiv) received, *inter alia*, contributions of labor, farmland access and use rights, watermelon farming knowledge and skill, and farming equipment from Utopia Farms in connection with its joint venture or partnership with Utopia Farms to grow and sell watermelons for a profit during the 2020/2021 Florida watermelon season;

(xxv) shared control with Utopia Farms over the watermelon crop grown by Utopia Farms during the 2020/2021 Florida watermelon season by, *inter alia*, directing the amount, variety, and delivery schedule for the Seeds purchased from Plaintiff and dictating Utopia Farms' watermelon planting and harvesting schedule;

(xxvi) upon information and belief, CH Robinson would direct Utopia Farms to charge or invoice CH Robinson below market price for watermelon during the 2020/2021 Florida watermelon season as a means to allocate profits and losses;

(xxvii) upon information and belief, did not receive watermelon from Utopia Farms in exchange for a commission reflecting a fixed percentage of the market value of the watermelon CH Robinson sold to its customers;

(xxviii) agreed to utilize the proceeds of its sale of both Southeastern and Utopia Farms' watermelon crops to third parties to pay Plaintiff's unpaid Seed invoices issued to both Southeastern and Utopia Farms;

(xxix) wrongfully refused or failed to pay, from the proceeds of its sale of both Southeastern and Utopia Farms 2020/2021 watermelon crop, Plaintiff's unpaid invoices to both Southeastern and Utopia Farms for Plaintiff's sale of watermelon Seeds;

(xxx) upon information and belief, wrongfully distributed to both Southeastern and Utopia Farms, instead of to Plaintiff, the proceeds of its sale of both Southeastern and Utopia Farms watermelon crop in full or partial payment or satisfaction of Plaintiff's unpaid invoices to both Southeastern and Utopia Farms for watermelon Seeds;

(xxxi) upon information and belief, wrongfully exercised its control over the prices both Southeastern and Utopia Farms charged CH Robinson for watermelon in such a manner as to ensure no funds would be available from the proceeds of its sale of both Southeastern and Utopia Farms watermelon crop to pay, in whole or in part, Plaintiff's unpaid invoices to both Southeastern and Utopia Farms for watermelon Seeds; and

(xxxii)    committed certain tortious acts, as set forth herein,

within the State of Florida.

4.    Sanders, Carter, and Turner shall hereinafter be collectively referred to as "*Principals*."

5.    Southeastern, Utopia Farms, Principals, and C.H. Robinson shall hereinafter be collectively referred to as "*Defendants*."

6.    At all times relevant hereto, both Southeastern and Utopia Farms acted or failed to act by and through its respective owners and officers and its agent, CH Robinson.

7.    With respect to both Southeastern and Utopia Farms, the acts, omissions, or failures of its respective owners, officers, employees, or agents constitute acts, omissions, or failures of the entity.

## JURISDICTION AND VENUE

8.    The District Court has subject matter jurisdiction over this civil action arising under 28 U.S.C. § 1332(a)(3) because this suit involves complete diversity between citizens of different states (i.e., Tennessee, Florida, Alabama, and Minnesota) with the matter exceeding $75,000.00.

9.    Venue in this district is based on 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred

in this district and a substantial part of the property that is the subject of this action is or was situated within this district.

## FACTUAL ALLEGATIONS

### Southeastern Produce

10.　Southeastern and CH Robinson purchased Seeds from Plaintiff on or about July 23, 2020.

11.　Southeastern, by and through Sanders and CH Robinson, negotiated its purchase of Seeds from Plaintiff.

12.　Representatives of CH Robinson worked directly with Plaintiff and placed orders for the various watermelon seed and seedling varieties Southeastern and CH Robinson jointly purchased from Plaintiff.

13.　Plaintiff issued, and Southeastern received, Invoice No. 958 in the principal amount of $231,595.00 for the watermelon Seeds and related seedlings and plant material identified therein.　A true and correct copy of Plaintiff's Invoice No. 958 is attached hereto as Exhibit A.

14.　Plaintiff delivered or otherwise caused the Seeds identified in Invoice No. 958 to be delivered to LaBelle, Florida via multiple shipments between September 9, 2020, and October 9, 2020.

15.     Southeastern, on behalf of itself and CH Robinson, received and accepted delivery of the Seeds and related seedlings and plant material in LaBelle, Florida and signed for its receipt of the same.

16.     Plaintiff sold to Southeastern and CH Robinson on credit, and Southeastern and CH Robinson purchased from Plaintiff, Seeds valued at the current aggregate amount of $250,405.66.  A true and correct copy of a chart of Plaintiff's unpaid invoice and accrued interest charges is attached hereto as Exhibit B.

17.     On September 16, 2020, Plaintiff and Southeastern, on behalf of itself and CH Robinson, entered into a payment agreement concerning Plaintiff's Invoice No. 958.

18.     Sanders executed the payment agreement on behalf of Southeastern.  A true and correct copy of the payment agreement is attached hereto as Exhibit C.

19.     The payment agreement provided that Southeastern would pay Plaintiff a $40,000.00 deposit and CH Robinson would pay the balance of Invoice No. 958 in full.

20.     The payment agreement provided CH Robinson with the written authority and direction it needed to redirect or forward "any and all amounts payable from CHR to Southeastern Produce" to Plaintiff "beginning 30 days after first harvest (approximately Dec. 20, 2020)."

21.     The payment agreement provided that "if [CH Robinson] is unable to pay [Plaintiff] invoice #958 in full by Jan 31, 2021, [Southeastern would assume] "full responsibility for and agrees to pay the remaining balance due to Plaintiff by February 28, 2021."

22.     Plaintiff communicated its need for prompt payment of the Seeds to both Southeastern and CH Robinson.

23.     Plaintiff communicated to CH Robinson that Southeastern was not independently creditworthy and did not appear to be able to pay for the amount of Seed CH Robinson requested to be delivered to Southeastern for the 2020/2021 Florida watermelon season.

24.     In response to Plaintiff's credit concerns about Southeastern, representatives from CH Robison communicated with Plaintiff orally and via text message regarding CH Robinson's agreement to pay Plaintiff's Invoice No. 958.

25.     CH Robinson provided Plaintiff with payment assurances regarding Plaintiff's Invoice No 958.

26.     Plaintiff would not have extended credit to Southeastern without the additional payment assurances from CH Robinson.

27.     Plaintiff relied upon CH Robinson's payment assurances and Southeastern's written payment agreement when it made the decision to extend credit to Southeastern.

28.     Plaintiff is an unpaid supplier of Seeds because both Southeastern and CH Robinson failed to pay for any of the Seeds identified in Plaintiff's Invoice No. 958.

29.     Southeastern and CH Robinson failed to pay or otherwise deliver good funds to the Plaintiff in the amount set forth in Exhibit A, despite repeated demands from the Plaintiff.

30.     At all relevant times hereto, Southeastern acted by and through Sanders, Carter, and CH Robinson as its joint venture partner.

31.     At all times relevant hereto, Southeastern lacked the liquidity or free cash flow to pay Plaintiff for any of the shipments of Seeds identified in Exhibits A.

32.     Southeastern lacked adequate capitalization to pay Plaintiff and to absorb losses resulting from its inability to collect upon its own accounts receivable while remaining solvent.

33.     Southeastern and CH Robinson conspired to and did improperly shift the risk of Southeastern's undercapitalization or bad debt risk to Plaintiff.

34.     Upon information and belief, at all times relevant hereto, Southeastern was insolvent.

35.     Upon information and belief, at all times relevant hereto, Southeastern's liabilities exceeded its assets.

36.     Because Southeastern entered into the payment agreement with Plaintiff and directed CH Robinson to use the proceeds of its watermelon sales to pay Plaintiff, Sanders and Carter each possessed actual and constructive knowledge of Southeastern's insolvency and inability to pay its bills in the ordinary course of its business.

37.     CH Robinson worked with Southeastern prior to the 2020/2021 Florida watermelon season at issue herein.

38.     Upon information and belief, CH Robinson provided money advances to Southeastern in connection with Southeastern's efforts to cultivate, grow, harvest, and market watermelons.

39.     Because CH Robinson's relationship with Southeastern involved, *inter alia*, lending and marketing/sales, CH Robinson had access to Southeastern's internal documents and other private information including bank account and financial information.

40.     Because CH Robinson had access to Southeastern's internal documents and other private information, CH Robinson knew or should have known of Southeastern's insolvency and inability to pay Plaintiff for the Seed needed for the 2020/2021 Florida watermelon program.

41.     CH Robinson was aware of Southeastern's insolvency and inability to pay Plaintiff for the Seed needed for the 2020/2021 Florida watermelon program

when CH Robinson provided payment assurances to Plaintiff in order to induce Plaintiff to extend credit to Southeastern.

42.    Southeastern's owners and officers and CH Robinson, as its joint venture partner, each failed to voluntarily cease the 2020/2021 Florida watermelon program and to otherwise refrain from receiving and accepting Seeds from Plaintiff on credit while Southeastern was either insolvent or during a time when Southeastern's liabilities exceeded its assets or it was otherwise unable to pay its undisputed debts when they became due.

**Utopia Farms**

43.    Utopia Farms and CH Robinson purchased Seeds from Plaintiff between October 27, 2020, and May 3, 2021.

44.    Utopia Farms, by and through Turner and CH Robinson, negotiated the purchase of Seeds from Plaintiff.

45.    Representatives of CH Robinson and Utopia Farms worked directly with Plaintiff and placed orders for the various watermelon seed and seedling varieties Utopia Farms purchased from Plaintiff.

46.    Plaintiff issued, and Utopia received, Invoice Nos. 1007, 1025, 1147, 1323, 1342, and 1358 in the aggregate principal amount of $1,027,293.77 for the watermelon Seeds and related seedlings and plant material identified therein.  A true

and correct copy of Plaintiff's aforementioned invoices is attached hereto as <u>Exhibit D</u>.

47.    Plaintiff delivered or otherwise caused the Seeds identified in <u>Exhibit D</u> to be delivered to Utopia Farms in Palmetto, Florida via multiple shipments from Mobley Plant World.

48.    Utopia Farms received and accepted delivery of the Seeds and related seedlings and plant material in Palmetto, Florida and signed for its receipt of the same.

49.    Plaintiff sold to Utopia Farms and CH Robinson on credit, and Southeastern and CH Robinson purchased from Plaintiff, Seeds valued at the current aggregate amount of $1,110,675.44.  A true and correct copy of a chart of Plaintiff's unpaid invoice and accrued interest charges is attached hereto as <u>Exhibit E</u>.

50.    On November 19, 2020, Plaintiff and Utopia Farms, on behalf of itself and CH Robinson, entered into a payment agreement concerning Plaintiff's Invoice Nos. 1007 and 1025.

51.    On April 29, 2021, Plaintiff and Utopia Farms, on behalf of itself and CH Robinson, entered into a payment agreement concerning Plaintiff's Invoice Nos. 1147, 1342, 1358, and 1323.

52.    Turner executed the payment agreements on behalf of Utopia Farms.  A true and correct copy of the payment agreements are attached hereto as <u>Exhibit F</u>.

53.    The payment agreements provided CH Robinson with the written authority and direction it needed to redirect or forward "any and all crop settlement amounts payable by CHR to Utopia Farms" to Plaintiff "beginning 30 days after first harvest."

54.    The payment agreements provided that "if [CH Robinson] is unable to pay [Plaintiff] any invoice in full, [Utopia Farms would assume] "full responsibility and agrees to pay the remaining balance due to Plaintiff."  *See* Exhibit F.

55.    Plaintiff communicated its need for prompt payment of the Seeds to both Utopia Farms and CH Robinson.

56.    Plaintiff communicated its belief to CH Robinson that Utopia Farms was not creditworthy and did not appear to be able to pay for the amount of Seeds CH Robinson needed Utopia Farms to grow for the 2020/2021 Florida watermelon season.

57.    Plaintiff communicated its concern to CH Robinson that Utopia Farms was sued in 2019 by its former seed provider, Siegers Seed Company, for its failure to pay for more than $1,800,000.00 of Seeds (U.S. District Court for the Western District of Michigan, Case No. 1:19-cv-371) and would not agree to extend credit to Utopia Farms alone.

58.    In response to Plaintiff's credit concerns about Utopia Farms, representatives from CH Robison communicated with Plaintiff orally and via text

message regarding CH Robinson's agreement to pay Plaintiff's unpaid invoices to Utopia Farms for Seeds.

59.    CH Robinson provided Plaintiff with payment assurances regarding Plaintiff's invoices to Utopia Farms for Seeds.

60.    Plaintiff would not have extended credit to Utopia Farms without the additional payment assurances from CH Robinson.

61.    Plaintiff relied upon CH Robinson's payment assurances and Utopia Farm's written payment agreements when it made the decision to extend credit to Utopia Farms.

62.    Plaintiff is an unpaid supplier of Seeds because both Utopia Farms and CH Robinson failed to pay for any of the Seeds identified in Plaintiff's unpaid invoices identified in Exhibit D.

63.    Utopia Farms and CH Robinson failed to pay or otherwise deliver funds to the Plaintiff in the amount set forth in Exhibit D, despite repeated demands from the Plaintiff.

64.    At all relevant times hereto, Utopia Farms acted by and through Turner and CH Robinson as its joint venture partner.

65.    At all times relevant hereto, Utopia Farms lacked the liquidity or free cash flow to pay Plaintiff for any of the shipments of Seeds identified in Exhibits D.

66.    Utopia Farms lacked adequate capitalization to pay Plaintiff and to absorb losses resulting from its inability to collect upon its own accounts receivable while remaining solvent.

67.    Utopia Farms and CH Robinson conspired to and did improperly shift the risk of Utopia Farms' undercapitalization or bad debt risk to Plaintiff.

68.    Upon information and belief, at all times relevant hereto, Utopia Farms was insolvent.

69.    Upon information and belief, at all times relevant hereto, Utopia Farm's liabilities exceeded its assets.

70.    Because Utopia Farms entered into the payment agreements with Plaintiff and directed CH Robinson to use the proceeds of its watermelon sales to pay Plaintiff, Turner and CH Robinson each possessed actual and constructive knowledge of Utopia Farm's insolvency and inability to pay its bills in the ordinary course of its business.

71.    CH Robinson worked with Utopia Farms prior to the 2020/2021 Florida watermelon Season at issue herein.

72.    Upon information and belief, CH Robinson's provided money advances to Utopia Farms in connection with Utopia Farms' efforts to cultivate, grow, harvest, and market its watermelons.

73.     Because CH Robinson's relationship with Utopia involved lending and sales, CH Robinson had access to Utopia Farm's internal documents and other private information including bank account and financial information.

74.     Because CH Robinson had access to Utopia Farm's internal documents and other private information, CH Robinson knew or should have known of Utopia Farm's insolvency and inability to pay Plaintiff for the Seeds needed for the 2020/2021 Florida watermelon program.

75.     CH Robinson was aware of Utopia Farm's insolvency and inability to pay Plaintiff for the Seeds needed for the 2020/2021 Florida watermelon program when CH Robinson provided payment assurances to Plaintiff to induce Plaintiff to extend credit to Utopia Farms.

76.     Utopia Farm's owners and officers and CH Robinson, as its joint venture partner, each failed to voluntarily cease the 2020/2021 Florida watermelon program and to otherwise refrain from receiving and accepting Seeds from Plaintiff on credit while Utopia Farms was either insolvent or during a time when Utopia Farm's liabilities exceeded its assets or it was unable to pay its undisputed debts when they became due.

## COUNT I

## BREACH OF CONTRACT

## SOUTHEASTERN and CH ROBINSON

77.     Plaintiff re-alleges paragraphs 1 through 7 and 10 through 42 as though fully set forth herein.

78.     Plaintiff and Southeastern, by and through Sanders and CH Robinson, entered into a contract for the purchase and sale of watermelon Seeds and related plaint material or seedlings, which is identified in Exhibit A.

79.     In connection with the sales transaction identified in Par. 78, CH Robinson worked directly with Plaintiff to establish the quantities, varieties, and delivery of the Seeds identified in Exhibit A.

80.     In connection with the sale transaction identified in Par. 78, CH Robinson provided Plaintiff with payment assurances in connection with Plaintiff's agreement to provide Southeastern with credit.

81.     In connection with the sales transaction identified in Par. 78, Southeastern provided Plaintiff with additional payment assurances in the form of the signed payment agreement identified in Exhibit C.

82.     Plaintiff relied upon the promises, representations, and payment assurances from both Southeastern and CH Robinson when it agreed to sell Seeds to Southeastern on credit.

83.     But for the promises, representations, and payment assurances Plaintiff received from CH Robinson, Plaintiff would not have agreed to extend Southeastern any credit.

84.     But for the promises, representations, and written payment assurances Plaintiff received from Southeastern, Plaintiff would not have agreed to extend Southeastern any credit.

85.     Based on the promises, representations, and payment assurances from both Southeastern and CH Robinson, Plaintiff agreed to sell Seeds to Southeastern on credit and Southeastern agreed, *inter alia*, to purchase, receive, and accept the Seeds from Plaintiff.

86.     Plaintiff delivered or otherwise caused all the Seeds identified in Exhibit A to be delivered or tendered to Southeastern and has satisfied all conditions of its contract(s) with Southeastern and CH Robinson.

87.     Southeastern, on behalf of itself and CH Robinson, received and accepted all the Seeds identified in Exhibit A within the State of Florida.

88.     Southeastern, on behalf of itself and CH Robinson, failed to reject or otherwise object to its receipt of any load of Seeds identified in Exhibits A.

89.     Southeastern utilized CH Robinson, as its joint venture partner, to sell all the fruit (i.e., watermelon) resulting from Plaintiff's Seeds identified in Exhibits A.

90.    Southeastern and CH Robinson have both failed or refused to pay or otherwise deliver good funds to Plaintiff for the Seeds identified Exhibit A within the applicable payment terms that were in effect at the time of the transaction.

91.    No just cause exists for either Southeastern or CH Robinson's failure or refusal to pay or otherwise deliver good funds to Plaintiff for the Seeds identified in Exhibit A.

92.    Upon information and belief, at all times relevant hereto, Southeastern lacked the ability to pay its creditors in the ordinary course of business and was insolvent.

93.    Plaintiff is an unpaid supplier of Seeds holding Seed related invoices to Southeastern that remain unpaid.

94.    As a direct result of Southeastern and CH Robinson's breaches of contract, Plaintiff has incurred damages in an amount not less than $250,405.66, plus further interest incurred in this action.

## COUNT II

## **BREACH OF CONTRACT**

## **SOUTHEASTERN and CH ROBINSON**

95.    Plaintiff re-alleges paragraphs 1 through 7, 10 through 42, and 77 through 94 as though fully set forth herein.

96.    Plaintiff and Southeastern, on behalf of itself and CH Robinson, entered into a contract wherein Southeastern provided Plaintiff with written payment assurances related to its purchase of watermelon Seeds and related plant material or seedlings from Plaintiff, which is identified in Exhibit A.  *See* Exhibit C.

97.    Sanders executed the payment agreement identified in Exhibit C on behalf of Southeastern.

98.    CH Robinson received notice of the payment agreement identified in Exhibit C.

99.    CH Robinson received a copy of the payment agreement identified in Exhibit C.

100.    Southeastern's representations and promises to Plaintiff contained in Exhibit C, coupled with the oral and written payment assurances it received from CH Robinson, caused Plaintiff to agree to extend credit to Southeastern.

101.    Plaintiff extended credit to Southeastern and delivered or otherwise caused all the Seeds identified in Exhibit A to be delivered or tendered to Southeastern and has satisfied all conditions of its contract(s) with Southeastern and CH Robinson.

102.    Plaintiff fully performed its obligations to Southeastern and CH Robinson under the terms of the payment agreement identified in Exhibit C.

103.   Southeastern failed or refused to pay or otherwise deliver good funds to Plaintiff in the agreed upon deposit amount of $40,000.00 identified in Exhibit C.

104.   Southeastern and CH Robinson have both failed or refused to pay or otherwise deliver good funds to Plaintiff for the Seeds identified Exhibit A within the applicable payment terms that were in effect at the time of the transaction.

105.   CH Robinson failed or refused to pay or otherwise deliver good funds to Plaintiff from "any and all amounts payable from CHR to Southeastern" from CH Robinson's sale of Southeastern's 2020/2021 Florida watermelon crop resulting from Plaintiff's Seeds.

106.   No just cause exists for either Southeastern or CH Robinson's failure or refusal to pay or otherwise deliver good funds to Plaintiff for the Seeds identified in Exhibit A.

107.   As a direct result of Southeastern and CH Robinson's breaches of contract, Plaintiff has incurred damages in an amount not less than $250,405.66, plus further interest incurred in this action.

## COUNT III

## FRAUDLENT MISREPRESENTATION AND FRAUDULENT INDUCEMENT

## CH ROBINSON

108.   Plaintiff re-alleges paragraphs 1 through 7, 10 through 42, and 77 through 107 as though fully set forth herein.

109.   In connection with Plaintiff's decision not to extend credit to either Southeastern or Utopia Farms, Plaintiff communicated, via text and phone, to CH Robinson as well as directly to Southeastern and Utopia Farms, its concerns about Southeastern's and Utopia Farms' independent creditworthiness and their independent ability to pay for the Seed CH Robinson needed Southeastern and Utopia Farms to grow during the 2020/2021 Florida watermelon season and informed CH Robinson that it would not extend credit to Southeastern and Utopia Farms without the security of CH Robinson indemnifying the Seed-related debt.

110.   Plaintiff declined to extend credit to Southeastern for the amount of Seed CH Robinson needed Southeastern to grow during the 2020/2021 Florida watermelon season because it was a new company formed in December of 2019, it did not have a published credit report with the Blue Book Services, and it was the subject of a UCC-1 financing statement covering its 2020/2021 watermelon crops and involving a secured creditor that financed the purchase of seed from a prior season.

111.   In response to Plaintiff's articulated concerns about Southeastern's creditworthiness and its decision not to extend credit to Southeastern, Sanders provided Plaintiff with oral assurances of payment and signed the payment agreement identified in Exhibit C, which promised Plaintiff a $40,000 deposit and authorized and directed CH Robinson to pay to Plaintiff any funds that CH Robinson had

available to disburse to Southeastern from CH Robinson's sale of Southeastern's watermelon.

112.   In response to Plaintiff's articulated concerns about Southeastern's creditworthiness and its decision not to extend credit to Southeastern, Kelly Tyner, regional manager of CH Robinson, provided Plaintiff with oral and written assurances of payment and specifically represented: (i) that there would be enough funds from CH Robinson's sale of the watermelon crop grown by Southeastern to pay both CH Robinson and Plaintiff; and (ii) CH Robinson would pay Plaintiff for the Seeds sold and delivered to Southeastern if Southeastern failed to do so. Specifically, Kelly Tyner of CH Robinson, during a video conference with Plaintiff on the morning of September 29, 2020, represented to Brock Lidy, Chris Gordan, and Rob Beets, employees of Plaintiff, that CH Robinson would pay Plaintiff for the Seeds sold and delivered to Southeastern if Southeastern failed to do so.

113.   Kelly Tyner's written and oral representations to Brock Lidy, Chris Gordan, and Rob Beets regarding the availability of funds from CH Robinson's sale of Southeastern's watermelon crop to pay Plaintiff's unpaid Seed invoice and its oral guarantee to pay the same if Southeastern failed to pay was material because it was in direct response to Plaintiff's articulated its concerns about Southeastern's independent creditworthiness and its decision to not extend credit to Southeastern alone.

114.   Based upon CH Robinson's statements, assurances, and promises to pay Plaintiff, Plaintiff reversed its original decision not to extend credit to Southeastern.

115.   CH Robinson knew or should have known its statements or representations to Plaintiff about the availability of funds to pay Plaintiff's unpaid Seed invoice to Southeastern was false because CH Robinson worked with Southeastern prior to the 2020/2021 Florida watermelon season at issue, provided advances or loans to Southeastern during those prior seasons, had access to Southeastern's financial and private information, and was still owed money by Southeastern when the 2020/2021 Florida watermelon season arrived.

116.   Because of CH Robinson's superior knowledge of Florida's watermelon markets, its prior work with Southeastern to grow and sell watermelon crops, and Southeastern's preexisting financial obligations to CH Robinson, CH Robinson knew or should have known that Southeastern's 2020/2021 Florida watermelon crop would not sell for enough money to pay the current season costs (e.g. Plaintiff's unpaid Seed invoice) and Southeastern's pre-existing debts to CH Robinson.

117.   At the time CH Robinson made the aforementioned representations to Plaintiff, CH Robinson knew, but failed to disclose to Plaintiff, that Southeastern owed it money from unpaid advances or loans CH Robinson provided to Southeastern for prior watermelon seasons.

118.   CH Robinson possessed a duty to disclose to Plaintiff facts within its knowledge and to answer Plaintiff's inquiries about Southeastern's financial situation because CH Robinson voluntarily addressed these issues with Plaintiff for the purpose of inducing Plaintiff to reverse its original decision not to provide Southeastern with credit.

119.   CH Robinson's statements to Plaintiff regarding the availability of funds from its sale of the watermelon grown by Southeastern during the 2020/2021 Florida watermelon season constituted a voluntary undertaking by CH Robinson to share information with Plaintiff about Southeastern's creditworthiness and financial condition.

120.   CH Robinson's failure to disclose the fact that Southeastern was indebted to CH Robinson from prior seasons was material because this omission: (i) directly affected Plaintiff's perception of the truth of CH Robinson's statement to Plaintiff regarding the availability of funds from CH Robinson's sale of the watermelons grown by Southeastern during the 2020/2021 Florida watermelon season to pay its Seed invoice to Southeastern; and (ii) concealed important information Plaintiff needed to evaluate its election to reverse its decision not to provide credit to Southeastern.

121.   At the time CH Robinson made the aforementioned representations to Plaintiff, CH Robinson knew, but failed to disclose to Plaintiff, that CH Robinson

received all the watermelons grown by Southeastern on open price terms (i.e., not market price terms) and was in a position to direct or control how much Southeastern invoiced CH Robinson for watermelon during the 2020/2021 Florida watermelon season.

122.    CH Robinson's failure to disclose the fact that CH Robinson received all the watermelons grown by Southeastern on open price terms (i.e., not market price terms) and was in a position to direct or control how much Southeastern invoiced CH Robinson for watermelon during the 2020/2021 Florida watermelon season was material because this omission: (i) directly affected Plaintiff's perception of the truth of CH Robinson's statement to Plaintiff regarding the availability of funds from CH Robinson's sale of the watermelons grown by Southeastern during the 2020/2021 Florida watermelon season to pay its Seed invoice to Southeastern; (ii) perpetuated the false and misleading impression that Southeastern would benefit from the market prices CH Robinson obtained from its sale of watermelon; and (iii) concealed important information Plaintiff needed to evaluate its election to reverse its decision not to provide credit to Southeastern.

123.    Upon information and belief, at the time it made the aforementioned representations to Plaintiff, CH Robinson had no real intention of paying or otherwise satisfying Plaintiff's unpaid invoice to Southeastern for Seeds.

124.   CH Robinson intended Plaintiff to both rely upon and act upon its aforementioned false statements and omissions regarding Southeastern because CH Robinson worked directly with Plaintiff to order the Seeds needed for Southeastern's 2020/2021 Florida watermelon season and to address Plaintiff's specific concerns regarding Southeastern's independent creditworthiness and its original decision not to provide credit to Southeastern.

125.   Upon information and belief, had CH Robinson truly believed that enough funds would have been generated from the sale of Southeastern's 2020/2021 Florida watermelon crop to satisfy debts to and pay both CH Robinson and Plaintiff in full, CH Robinson would have ordered the Seed itself and not aided or facilitated Plaintiff's sale of Seed to Southeastern.

126.   Upon information and belief, CH Robinson needed to reduce its direct liabilities or financial exposure regarding Southeastern's farming operation in 2020/2021 (e.g., ordering Seed) to ensure the availability of the watermelon sale proceeds needed to pay all Southeastern's debt to CH Robinson.

127.   CH Robinson accomplished its goal of reducing its direct liabilities or financial exposure regarding Southeastern's farming operation in 2020/2021 by fraudulently inducing Plaintiff to ignore Southeastern's lack of independent creditworthiness and to reverse its prior decision not to extend credit or otherwise sell

the necessary Seeds to Southeastern for CH Robinson's 2020/2021 Florida watermelon program.

128. CH Robinson made the foregoing false statements or fraudulent misrepresentations and omissions to Plaintiff for the improper purpose of inducing Plaintiff to act (i.e., to change its mind regarding the extension of credit to Southeastern for Seed) and to wrongfully shift Southeastern's bad debt risk from CH Robinson to Plaintiff.

129. Plaintiff reasonably relied upon CH Robinson's false statements or fraudulent misrepresentations regarding the availability of funds from the watermelon sales proceeds to pay Plaintiff because (i) CH Robinson had prior experience, and therefore superior knowledge, selling Southeastern's watermelons, (ii) CH Robinson was the exclusive marketer for all of Southeastern's watermelons in 2020/2021 and previously, and (iii) CH Robinson is a sophisticated and significant Produce industry participant highly experienced in Florida watermelons sales.

130. Plaintiff reasonably relied upon CH Robinson's guarantee or promise to pay Plaintiff's invoice to Southeastern for Seeds because: (i) CH Robinson is a large, well known, company with annual gross revenues in excess of $20 billion; (ii) Plaintiff reviewed CH Robinson's Blue Book Services fresh produce industry profile and confirmed that CH Robinson's industry creditworthiness was reported as

"250,000M" and is a "low risk" buyer; and (iii) Plaintiff previously worked with CH Robinson on unrelated projects without incident.

131.    As direct result of Plaintiff's reliance upon CH Robinson's materially false statements or fraudulent misrepresentations, Plaintiff reversed its original decision not to extend credit to Southeastern or otherwise sell Seeds to Southeastern alone.

132.    As a direct result of Plaintiff's reliance upon CH Robinson's materially false statements or fraudulent misrepresentations and its subsequent reversal of its original decision not to extend credit to Southeastern or otherwise sell Seeds to Southeastern alone, Plaintiff has incurred damages in an amount not less than $250,405.66, plus further interest incurred in this action.

## COUNT IV

## <u>NEGLIGENT MISREPRESENTATION</u>

## CH ROBINSON

133.    Plaintiff re-alleges paragraphs 1 through 7, 10 through 42, and 77 through 132 as though fully set forth herein.

134.    In connection with Plaintiff's original decision not to extend credit to Southeastern, Plaintiff communicated, via text and phone, to both CH Robinson and Southeastern its concerns about Southeastern's independent creditworthiness and its

independent ability to pay for the amount Seeds CH Robinson needed Southeastern to grow during the 2020/2021 Florida watermelon season.

135.   Plaintiff also informed CH Robinson that it would not extend credit to Southeastern alone.

136.   In response to Plaintiff's articulated concerns about Southeastern's creditworthiness and its decision not to extend credit to Southeastern, Kelly Tyner of CH Robinson provided Plaintiff with oral and written assurances of payment and specifically represented to Plaintiff that there would be enough funds from CH Robinson's sale of the watermelon crop grown by Southeastern to pay both CH Robinson and Plaintiff.  Specifically, Kelly Tyner of CH Robinson, during a video conference with Plaintiff on the morning of September 29, 2020, represented to Brock Lidy, Chris Gordan, and Rob Beets of Plaintiff, that CH Robinson would pay Plaintiff for the Seeds sold and delivered to Southeastern if Southeastern failed to do so.

137.   CH Robinson's representations to Plaintiff regarding the availability of funds from CH Robinson's sale of Southeastern's watermelon crop in 2020/2021 to pay its unpaid Seed invoice was material because Plaintiff articulated its concerns to CH Robinson about Southeastern's independent creditworthiness and its decision to not extend credit to Southeastern alone and CH Robinson responded by volunteering or electing to provide Plaintiff with payment assurances and promises.

138.   Even if CH Robinson believed its statement to Plaintiff regarding the availability of funds from CH Robinson's sale of Southeastern's watermelon crop in 2020/2021 to pay its unpaid Seed invoice to be true based on past experiences with Southeastern's watermelon crops and its superior access to information about Southeastern, it was in fact false because CH Robinson failed to pay Plaintiff for any portion of Plaintiff's unpaid invoice to Southeastern for Seeds.

139.   CH Robinson's representations to Plaintiff regarding the availability of funds from CH Robinson's sale of Southeastern's watermelon crop in 2020/2021 to pay its unpaid Seed invoice were negligent because CH Robinson should have known, at the time CH Robinson made this statement to Plaintiff, CH Robinson had not completed its marketing and sales work for the watermelons grown by Southeastern during the 2020/2021 Florida watermelon season and Southeastern still owed CH Robinson money on unpaid loans or advances from prior seasons when the 2020/2021 Florida watermelon season arrived.

140.  CH Robinson knew or should have known its statements or representations to Plaintiff about the availability of funds to pay Plaintiff's unpaid Seed invoice to Southeastern was false because CH Robinson worked with Southeastern prior to the 2020/2021 Florida watermelon season at issue, provided advances or loans to Southeastern during those prior seasons, had access to

Southeastern's financial and private information, and was still owed money by Southeastern when the 2020/2021 Florida watermelon season arrived.

141. CH Robinson's representations to Plaintiff regarding the availability of funds from CH Robinson's sale of Southeastern's watermelon crop in 2020/2021 to pay its unpaid Seed invoice were in fact false because CH Robinson failed to pay Plaintiff for any portion of Plaintiff's unpaid invoice to Southeastern for Seeds.

142. Plaintiff reasonably relied upon CH Robinson's false statements or negligent misrepresentations regarding the availability of funds from the watermelon sales proceeds to pay Plaintiff because CH Robinson had prior experience, and therefore superior knowledge, selling Southeastern's watermelons, CH Robinson was the exclusive marketer for all of Southeastern's watermelons in 2020/2021 and previously, and CH Robinson is highly experienced in Florida watermelons sales.

143. As direct result of Plaintiff's reliance upon CH Robinson's materially false statements or negligent misrepresentations, Plaintiff reversed its original decision not to extend credit to Southeastern or otherwise sell Seeds to Southeastern alone.

144. As a direct result of Plaintiff's reliance upon CH Robinson's materially false statements or negligent misrepresentations and its subsequent reversal of its original decision not to extend credit to Southeastern or otherwise sell Seeds to

Southeastern alone, Plaintiff has incurred damages in an amount not less than $250,405.66, plus further interest incurred in this action.

## COUNT V

## BREACH OF ORAL CONTRACT OF GUARANTY

## CH ROBINSON

145.    Plaintiff re-alleges paragraphs 1 through 7, 10 through 42, and 77 through 144 as though fully set forth herein.

146.    Plaintiff and CH Robinson entered an oral contract wherein Kelly Tyner of CH Robinson, during a video conference with Plaintiff on the morning of September 29, 2020, specifically represented to Brock Lidy, Chris Gordan, and Rob Beets, employees of Plaintiff, that CH Robinson would pay Plaintiff for the Seeds sold and delivered to Southeastern if Southeastern failed to do so.

147.    CH Robinson's oral guarantee to pay Plaintiff's invoice to Southeastern for Seeds if Southeastern failed to pay was material because it was provided in direct response to Plaintiff's articulated its concerns about Southeastern's independent creditworthiness and its decision to not extend credit to Southeastern alone.

148.    Based upon CH Robinson's oral agreement to pay Plaintiff's invoice to Southeastern for Seeds if Southeastern failed to pay, Plaintiff reversed its original decision not to extend credit to Southeastern.

149.   Plaintiff extended credit to Southeastern and delivered or otherwise caused all the Seeds identified in Exhibit A to be delivered or tendered to Southeastern and has satisfied all conditions of its contract(s) with Southeastern and CH Robinson.

150.   Southeastern and CH Robinson have both failed or refused to pay or otherwise deliver good funds to Plaintiff for the Seeds identified Exhibit A within the applicable payment terms that were in effect at the time of the transaction.

151.   Southeastern's failure or refusal to pay Plaintiff for the Seeds identified in Exhibit A triggered CH Robinson's obligation to pay Plaintiff's unpaid invoice to Southeastern for Seeds.

152.   Despite Plaintiff's demands for payment to both Southeastern and CH Robinson, Plaintiff's invoice to Southeastern for Seeds remains unpaid.

153.   No just cause exists for CH Robinson's failure or refusal to pay or otherwise deliver good funds to Plaintiff for the Seeds identified in Exhibit A.

154.   As a direct result of CH Robinson's breach of guaranty contract, Plaintiff has incurred damages in an amount not less than $250,405.66, plus further interest incurred in this action.

## COUNT VI

## <u>CONVERSION</u>

### SOUTHEASTERN, SANDERS, CARTER, & CH ROBINSON

155.   Plaintiff re-alleges paragraphs 1 through 7, 10 through 42, and 77 through 154 as though fully set forth herein.

156.   Plaintiff provided both Southeastern and CH Robinson with Seeds worth not less than $231,595.00 upon these Defendants wrongful acquisition thereof, and not less than $250,405.66, considering appropriate interest accumulating thereon.

157.   Plaintiff sold watermelon Seeds to Southeastern and CH Robinson, and Southeastern received the Seeds and CH Robinson sold the watermelon resulting from the Seeds to third parties, for which it has not paid Plaintiff, and which benefited these Defendants.

158.   At all times relevant hereto, Sanders, Carter, and CH Robinson were each in a position to control and manage Southeastern's farming operations and had the ability to control Southeastern's financial dealings.

159.   At all times relevant hereto, Sanders, Carter, and CH Robinson were each in a position to influence Southeastern and Southeastern's application of its operating funds and otherwise had the power to influence the application or disposition of said funds.

160.   As a joint venture partner of Southeastern, CH Robinson collected or received all of the sale proceeds generated from the sale of the watermelons Southeastern grew during the 2020/2021 Florida watermelon season.

161.   Southeastern accepted the physical Seeds from Plaintiff and failed to pay Plaintiff for said Seeds.

162.   On information and belief, Southeastern, Sanders, Carter, and CH Robinson have converted to its own individual and collective use and benefit, the Seeds herein identified which have generated certain monies from the sale of the watermelons Southeastern grew during the 2020/2021 Florida watermelon season valued in excess of $250,405.66.

163.   On information and belief, CH Robinson has used funds it collected or received from the sale of the watermelons Southeastern grew during the 2020/2021 Florida watermelon season resulting from converted Seeds, for the purpose of paying Southeastern's preexisting and undisclosed debts to CH Robinson instead of paying Plaintiff for the Seeds.

164.   The foregoing conversion of Seeds and use of the resultant $250,405.66 of sale proceeds benefits CH Robinson by repaying pre-existing debt owed to it by Southeastern, Sanders, and Carter.

165.   The foregoing conversion of Seeds and use of the resultant $250,405.66 reduces the amount of debt Southeastern, Sanders, and Carter owes CH Robinson and, thereby benefits Southeaster, Sanders, and Carter.

166.   Sanders and Carter failed to ensure that CH Robinson, as Southeastern's joint venture partner, made no use of the funds it collected on behalf of Southeastern other than to faithfully and promptly pay Plaintiff for the Seeds.

167.   Sanders and Carter authorized or approved Southeastern and CH Robinson's failure or decision not to pay Plaintiff for the Seeds sold to Southeastern. As such, each named Defendant in this Count VI has participated in conversion of Plaintiff's Seeds.

168.   Sanders and Carter failed to object to, counteract, obviate, or otherwise act to prevent Southeastern and CH Robinson's failure or decision to not to pay Plaintiff and in so doing to convert Plaintiff's Seeds.

169.   Southeastern, Sanders, Carter, and CH Robinson's individual and collective conversion of Seeds and use of the funds CH Robinson collected or received from its sale of Southeastern's 2020/2021 Florida watermelon crop for purposes other than paying Plaintiff (i.e., to pay CH Robinson and Southeastern's preexisting debts to CH Robinson) has directly and proximately caused injury to Plaintiff in an amount not less than $250,405.66, plus further interest.

## COUNT VII

## UNJUST ENRICHMENT

## SOUTHEASTERN, SANDERS, CARTER, & CH ROBINSON

170.   Plaintiff re-alleges paragraphs 1 through 7, 10 through 42 and 77 through 169 as though fully set forth herein.

171.   Plaintiff sold Seeds to Southeastern, and Southeastern received Plaintiff's Seeds and, utilizing CH Robinson as joint venture partner, sold the watermelon resulting from the Seeds to third parties, for which it has not paid Plaintiff.

172.   CH Robinson collected and received all the sale proceeds from its sale of Southeastern's 2020/2021 Florida watermelon crop, which Southeastern grew, cultivated, produced, and harvested from Plaintiff's Seeds.

173.   On information and belief, CH Robinson has used funds it collected or received on behalf of Southeastern from its sale of watermelon resulting from Plaintiff's unpaid Seeds, for the purpose of paying Southeastern preexisting and undisclosed debts to CH Robinson instead of paying Plaintiff for the Seeds.

174.   No just cause exists in law or equity for Southeastern, Sanders, Carter, or CH Robinson to receive or retain any portion of the funds CH Robinson received or collected from the sale of watermelon resulting from Plaintiff's Seeds for which they have not paid.

175.   Upon information and belief, CH Robinson received and collected more proceeds from the sale of Southeastern's 2020/2021 Florida watermelon crop than the amount of Plaintiff's unpaid invoice to Southeastern for Seeds.

176.   Southeastern, Sanders, Carter, and CH Robinson have wrongfully used Seeds and resultant funds rightfully belonging to Plaintiff, and each is thereby unjustly enriched to the detriment of the Plaintiff.

177.   As a direct and proximate cause of the Defendants' wrongful conversion of Seeds belonging to Plaintiff and retention of funds due to Plaintiff, Plaintiff has been damaged and Southeastern, Sanders, Carter, and CH Robinson have been unjustly enriched in an amount not less than $250,405.66, plus further interest.

## COUNT VIII

## <u>BREACH OF CONTRACT</u>

### UTOPIA FARMS and CH ROBINSON

178.   Plaintiff re-alleges paragraphs 1 through 7 and 43 through 76 as though fully set forth herein.

179.   Plaintiff and Utopia Farms, by and through Turner and CH Robinson, entered into a contract for the purchase and sale of watermelon Seeds and related plaint material or seedlings, which is identified in <u>Exhibit D</u>.

180.  In connection with the sales transaction identified in Par. 179, CH Robinson worked directly with Plaintiff to establish the quantities, varieties, and delivery of the Seeds identified in <u>Exhibit D</u>.

181.  In connection with the sale transaction identified in Par. 179, CH Robinson provided Plaintiff with payment assurances in connection with Plaintiff's agreement to provide Utopia Farms with credit.

182.  In connection with the sale transaction identified in Par. 179, Utopia Farms provided Plaintiff with additional payment assurances in the form of the signed payment agreement identified in <u>Exhibit F</u>.

183.  Plaintiff relied upon the promises, representations, and payment assurances from both Utopia Farms and CH Robinson when it agreed to sell Seeds to Utopia Farms on credit.

184.  But for the promises, representations, and payment assurances Plaintiff received from CH Robinson, Plaintiff would not have agreed to extend Utopia Farms any credit.

185.  But for the promises, representations, and written payment assurances Plaintiff received from Utopia Farms, Plaintiff would not have agreed to extend Utopia Farms any credit.

186.  Based on the promises, representations, and payment assurances from both Utopia Farms and CH Robinson, Plaintiff agreed to sell Seeds to Utopia Farms

on credit and Utopia Farms agreed, *inter alia*, to purchase, receive, and accept the Seeds from Plaintiff.

187.   Plaintiff delivered or otherwise caused all the Seeds identified in <u>Exhibit D</u> to be delivered or tendered to Utopia Farms and has satisfied all conditions of its contract(s) with Utopia Farms.

188.   Utopia Farms received and accepted all the Seeds identified in <u>Exhibit D</u> within the State of Florida.

189.   Utopia failed to reject or otherwise object to its receipt of any load of Seeds identified in <u>Exhibit D.</u>

190.   Utopia Farms, by and through CH Robinson as its agent, sold all of the fruit (i.e., watermelon) resulting from Plaintiff's Seeds identified in <u>Exhibit D</u> to its customers or third parties.

191.   Utopia Farms and CH Robinson have both failed or refused to pay or otherwise deliver good funds to Plaintiff for the Seeds identified <u>Exhibit D</u> within the applicable payment terms that were in effect at the time of the transaction.

192.   No just cause exists for either Utopia Farms or CH Robinson's failure or refusal to pay or otherwise deliver good funds to Plaintiff for the Seeds identified in <u>Exhibits D</u>.

193.   Upon information and belief, at all times relevant hereto, Utopia Farms lacked the ability to pay its creditors in the ordinary course of business and was insolvent.

194.   Plaintiff is an unpaid supplier of Seeds holding Seed related invoices to Utopia Farms that remain unpaid.

195.   As a direct result of Utopia Farms' and CH Robinson's breaches of contract, Plaintiff has incurred damages in an amount not less than $1,110,675.44, plus further interest incurred in this action.

**COUNT IX**

**<u>BREACH OF CONTRACT</u>**

**UTOPIA and CH ROBINSON**

196.   Plaintiff re-alleges paragraphs 1 through 7 and 43 through 76 and 178 through 195 as though fully set forth herein.

197.   Plaintiff and Utopia Farms entered into a contract wherein Utopia Farms provided Plaintiff with written payment assurances related to its purchase of watermelon Seeds from Plaintiff, which is identified in <u>Exhibit D</u>.  *See* <u>Exhibit F</u>.

198.   Turner executed the payment agreement identified in <u>Exhibit F</u> on behalf of Utopia Farms.

199.   CH Robinson received notice of the payment agreement identified in <u>Exhibit F</u>.

200.   CH Robinson received a copy of the payment agreement identified in Exhibit F.

201.   Utopia Farms' representations and promises to Plaintiff contained in Exhibit F, coupled with the oral and written payment assurances it received from CH Robinson, caused Plaintiff to agree to extend credit to Utopia Farms.

202.   Plaintiff extended credit to Utopia Farms and delivered or otherwise caused all the Seeds identified in Exhibit D to be delivered or tendered to Utopia Farms and has satisfied all conditions of its contract(s) with Utopia Farms.

203.   Plaintiff fully performed its obligations to Utopia Farms under the terms of the payment agreement identified in Exhibit F.

204.   Utopia Farms and CH Robinson have both failed or refused to pay or otherwise deliver good funds to Plaintiff for the Seeds identified Exhibit D within the applicable payment terms that were in effect at the time of the transaction.

205.   CH Robinson failed or refused to pay or otherwise deliver good funds to Plaintiff from "any and all amounts payable from CHR to Utopia Farms" from CH Robinson's sale of Utopia Farms' 2020/2021 Florida watermelon crop resulting from Plaintiff's Seeds. Exhibit F.

206.   No just cause exists for either Utopia Farms or CH Robinson's failure or refusal to pay or otherwise deliver good funds to Plaintiff for the Seeds identified in Exhibit D.

207.   As a direct result of Utopia Farms and CH Robinson's breaches of contract, Plaintiff has incurred damages in an amount not less than $1,110,675.44, plus further interest incurred in this action.

## COUNT X

## FRAUDULENT MISREPRESENTATION AND FRAUDULENT INDUCEMENT

## CH ROBINSON

208.   Plaintiff re-alleges paragraphs 1 through 7 and 43 through 76 and 178 through 207 as though fully set forth herein.

209.   In connection with Plaintiff's decision not to extend credit to Utopia Farms, Plaintiff communicated, via text and phone, to CH Robinson as well as directly to Utopia Farms, its concerns about Utopia Farms' independent creditworthiness and independent ability to pay for the Seed CH Robinson needed for Utopia Farms to grow during the 2020/2021 Florida watermelon season. Plaintiff informed CH Robinson that it would not extend credit to Utopia Farms without the security of CH Robinson indemnifying or otherwise agreeing to satisfy the Seed-related debt.

210.   In response to Plaintiff's articulated concerns about Utopia Farms' creditworthiness, Turner provided Plaintiff with oral assurances of payment and signed the payment agreement identified in Exhibit F, which authorized and directed

CH Robinson to pay to Plaintiff any funds that CH Robinson had available to disburse to Utopia Farms from CH Robinson's sale of Utopia Farms' watermelon.

211.   In response to Plaintiff's articulated concerns about Utopia Farms' creditworthiness, CH Robinson provided Plaintiff with oral and written assurances of payment and specifically represented: (i) that there would be enough funds from CH Robinson's sale of Utopia Farms' watermelon crop to pay both CH Robinson and Plaintiff; and (ii) CH Robinson would pay for the Seeds sold to Utopia Farms if Utopia Farms failed to do so.  Specifically, Kelly Tyner of CH Robinson, during a video conference with Plaintiff on the morning of September 29, 2020, represented to Brock Lidy, Chris Gordan, and Rob Beets of Plaintiff, that CH Robinson would pay Plaintiff for the Seeds sold and delivered to Utopia if Utopia failed to do so.

212.   CH Robinson's representations to Plaintiff regarding the availability of funds from CH Robinson's sale of Utopia Farms' watermelon crop to pay its unpaid Seed invoices, and its oral guarantee to pay the same if Utopia Farms could not, were both material.  When Plaintiff articulated its concerns to CH Robinson about Utopia Farms' creditworthiness, CH Robinson and Utopia Farms both knew that without CH Robinson's promise to indemnify or otherwise make whole Plaintiff, that Plaintiff would not have sold or delivered the Seeds to Utopia Farms.

213.   CH Robinson knew its statements or representations to Plaintiff about the availability of funds to pay Plaintiff's unpaid Seed invoices to Utopia Farms was

false because CH Robinson worked with Utopia Farms prior to the 2020/2021 Florida watermelon season at issue, provided advances or loans to Utopia Farms during those prior seasons, and was still owed money by Utopia Farms when the 2020/2021 Florida watermelon season arrived.  Because of CH Robinson's knowledge of Florida's watermelon markets and Utopia Farms' preexisting financial obligations to CH Robinson, CH Robinson knew or should have known that Southeastern's 2020/2021 Florida watermelon crop would not generate enough in sales and profit to pay the current season costs (e.g. Plaintiff's unpaid Seed invoices) and Utopia Farms' pre-existing debts to CH Robinson.

214.   At the time CH Robinson made the aforementioned representations to Plaintiff, CH Robinson knew, but failed to disclose to Plaintiff, that Utopia Farms owed it money from unpaid advances or loans CH Robinson provided to Utopia Farms for prior watermelon seasons.

215.   Plaintiff materially relied on the aforementioned representations.  But for CH Robinson's false and intentionally misleading representations as described herein, Plaintiff would not have sold Seed to Utopia Farms.

216.   CH Robinson intended Plaintiff to both rely upon and act upon its payment assurances regarding Utopia Farms because CH Robinson worked directly with Plaintiff to order the Seeds needed for Utopia Farms' 2020/2021 Florida

watermelon program and to address Plaintiff's concerns regarding Utopia Farms' creditworthiness and risk of insolvency.

217.   Upon information and belief, had CH Robinson truly believed that enough funds would have been generated from the sale of Utopia Farms' 2020/2021 Florida watermelon crop to both CH Robinson and Plaintiff in full, CH Robinson would have ordered the Seed itself and not aided or facilitated Plaintiff's sale of Seed to Utopia Farms.

218.   Upon information and belief, CH Robinson needed to reduce its direct liabilities or financial exposure regarding Utopia Farms' farming operation in 2020/2021 (e.g., the cost of ordering Seed) to ensure the availability of the watermelon sale proceeds needed to pay all of Utopia Farms' outstanding or prior existing debt to CH Robinson.

219.   CH Robinson accomplished its goal of reducing its direct liabilities or financial exposure regarding Utopia Farms' farming operation in 2020/2021 by inducing Plaintiff through knowingly false representations to disregard Utopia Farms' lack of creditworthiness and sell the necessary Seed to Utopia Farms, not CH Robinson.

220.   Plaintiff reasonably relied upon CH Robinson's knowingly false representations regarding the availability of funds from its sale of Utopia Farms' watermelon crop to fraudulently induce Plaintiff into the agreement because (i) CH

Robinson had prior experience selling Utopia Farms' watermelons, (ii) CH Robinson was the exclusive sales agent for Utopia Farms' watermelons and had been previously, (iii) CH Robinson orally guaranteed to pay for the seed if Utopia Farms could or would not, and (iv) CH Robinson is a substantial and significant Produce industry participant highly experienced in Florida watermelons sales.

221.   As a direct result of CH Robinson's materially false statements made to Plaintiff and Plaintiff's reliance on the same, Plaintiff has incurred damages in an amount not less than $1,110,675.44, plus further interest incurred in this action.

**COUNT XI**

**<u>NEGLIGENT MISREPRESENTATION</u>**

**CH ROBINSON**

222.   Plaintiff re-alleges paragraphs 1 through 7 and 43 through 76 and 178 through 221 as though fully set forth herein.

223.   In connection with Plaintiff's original decision not to extend credit to Utopia, Plaintiff communicated, via text and phone, to both CH Robinson and Utopia its concerns about Southeastern's independent creditworthiness and its independent ability to pay for the amount of Seeds CH Robinson needed for Utopia to grow during the 2020/2021 Florida watermelon season.

224.   Plaintiff also informed CH Robinson that it would not extend credit to Utopia alone.

225. In response to Plaintiff's articulated concerns about Utopia's creditworthiness and its decision not to extend credit to Utopia, Kelly Tyner of CH Robinson provided Plaintiff with oral and written assurances of payment and specifically represented to Plaintiff that there would be enough funds from CH Robinson's sale of the watermelon crop grown by Utopia to pay both CH Robinson and Plaintiff. Specifically, Kelly Tyner of CH Robinson, during a video conference with Plaintiff on the morning of September 29, 2020, represented to Brock Lidy, Chris Gordan, and Rob Beets of Plaintiff, that CH Robinson would pay Plaintiff for the Seeds sold and delivered to Utopia if Utopia failed to do so.

226. CH Robinson's representations to Plaintiff regarding the availability of funds from CH Robinson's sale of Utopia's watermelon crop in 2020/2021 to pay its unpaid Seed invoice was material because Plaintiff articulated its concerns to CH Robinson about Utopia's independent creditworthiness and its decision to not extend credit to Southeastern alone and CH Robinson responded by volunteering or electing to provide Plaintiff with payment assurances and promises.

227. Even if CH Robinson believed its statement to Plaintiff regarding the availability of funds from CH Robinson's sale of Utopia's watermelon crop in 2020/2021 to pay its unpaid Seed invoice to be true based on past experiences with Utopia's watermelon crops and its superior access to information about it, it was in

fact false because CH Robinson failed to pay Plaintiff for any portion of Plaintiff's unpaid invoice to Utopia for Seeds.

228. CH Robinson's representations to Plaintiff regarding the availability of funds from CH Robinson's sale of Utopia's watermelon crop in 2020/2021 to pay its unpaid Seed invoice were negligent because CH Robinson should have known, at the time CH Robinson made this statement to Plaintiff, that CH Robinson had not completed its marketing and sales work for the watermelons grown by Utopia during the 2020/2021 Florida watermelon season and Utopia still owed CH Robinson substantial funds on unpaid loans or advances from prior seasons when the 2020/2021 Florida watermelon season arrived.

229. CH Robinson knew or should have known its statements or representations to Plaintiff about the availability of funds to pay Plaintiff's unpaid Seed invoice to Utopia was false because CH Robinson worked with Utopia prior to the 2020/2021 Florida watermelon season at issue, provided advances or loans to Utopia during those prior seasons, had access to Utopia's financial and private information, and was still owed money by Utopia when the 2020/2021 Florida watermelon season arrived.

230. CH Robinson's representations to Plaintiff regarding the availability of funds from CH Robinson's sale of Utopia's watermelon crop in 2020/2021 to pay its

unpaid Seed invoice were in fact false because CH Robinson failed to pay Plaintiff for any portion of Plaintiff's unpaid invoice to Utopia for Seeds.

231.   Plaintiff reasonably relied upon CH Robinson's false statements or negligent misrepresentations regarding the availability of funds from the watermelon sales proceeds to pay Plaintiff because CH Robinson had prior experience, and therefore superior knowledge, selling Utopia's watermelons, CH Robinson was the exclusive marketer for all of Utopia's watermelons in 2020/2021 and previously, and CH Robinson is highly experienced in Florida watermelons sales.

232.   As direct result of Plaintiff's reliance upon CH Robinson's materially false statements or negligent misrepresentations, Plaintiff reversed its original decision not to extend credit to Utopia or otherwise sell Seeds to Utopia alone.

233.   As a direct result of Plaintiff's reliance upon CH Robinson's materially false statements or negligent misrepresentations and its subsequent reversal of its original decision not to extend credit to Utopia or otherwise sell Seeds to Utopia alone, Plaintiff has incurred damages in an amount not less than $1,110,675.44, plus further interest incurred in this action.

## COUNT XII

## <u>BREACH OF ORAL CONTRACT OF GUARANTY</u>

## CH ROBINSON

234.   Plaintiff re-alleges paragraphs 1 through 7 and 43 through 76 and 178 through 233 as though fully set forth herein.

235.   Plaintiff and CH Robinson entered an oral contract wherein Kelly Tyner of CH Robinson, during a video conference with Plaintiff on the morning of September 29, 2020, specifically represented to Brock Lidy, Chris Gordan, and Rob Beets of Plaintiff, that CH Robinson would pay Plaintiff for the Seeds sold and delivered to Utopia if Utopia failed to do so.

236.   CH Robinson's oral guarantee to pay Plaintiff's invoice to Utopia for Seeds if Utopia failed to pay was material because it was provided in direct response to Plaintiff's articulated its concerns about Utopia's independent creditworthiness and its decision to not extend credit to Utopia alone. Simply stated, but for CH Robinson's guaranty that it would indemnify or otherwise pay for any shortfall arising from Utopia's failure to pay for the Seeds, Plaintiff would not have delivered or sold Utopia and CH Robinson the Seeds identified in <u>Exhibit D</u>.

237.   Based upon CH Robinson's oral agreement to pay Plaintiff's invoice to Utopia for Seeds if Utopia failed to pay, Plaintiff thereby reversed its original decision not to extend credit to Utopia.

238.    Plaintiff extended credit to Utopia and delivered or otherwise caused all the Seeds identified in <u>Exhibit D</u> to be delivered or tendered to Utopia and has satisfied all conditions of its contract(s) with Utopia and CH Robinson.

239.    Utopia and CH Robinson have both failed or refused to pay or otherwise deliver good funds to Plaintiff for the Seeds identified <u>Exhibit D</u> within the applicable payment terms that were in effect at the time of the transaction.

240.    Utopia's failure or refusal to pay Plaintiff for the Seeds identified in <u>Exhibit D</u> triggered CH Robinson's obligation to pay Plaintiff's unpaid invoice to Utopia for Seeds.

241.    Despite Plaintiff's demands for payment to both Utopia and CH Robinson, Plaintiff's invoices for these Seeds remains unpaid.

242.    No just cause exists for CH Robinson's failure or refusal to pay or otherwise deliver good funds to Plaintiff for the Seeds identified in <u>Exhibit D</u>.

243.    As a direct result of CH Robinson's breach of its oral guaranty contract, Plaintiff has incurred damages in an amount not less than $1,110,675.44, plus further interest incurred in this action.

## COUNT XIII

## <u>CONVERSION</u>

### UTOMPIA FARMS, TURNER, & CH ROBINSON

244.   Plaintiff re-alleges paragraphs 1 through 7 and 43 through 76 and 178 through 243 as though fully set forth herein.

245.  Plaintiff provided both Utopia Farms and CH Robinson with Seeds worth not less than $1,110,675.44, which these Defendants accepted under false pretenses and converted to their own control, use, and benefit.

246.   Plaintiff delivered watermelon Seeds to Utopia Farms, and Utopia Farms received and, utilizing CH Robinson as its exclusive sales agent, sold the watermelon resulting from the Seeds to third parties, for which it has not paid Plaintiff.

247.   At all times relevant hereto, Turner and CH Robinson were each in a position to control and manage Utopia Farms' farming operations and had the ability to control Utopia Farms' financial dealings.

248.   At all times relevant hereto, Turner and CH Robinson were each in a position to influence Utopia Farms and Utopia Farms' application of its operating funds and otherwise had the power to influence the application or disposition of said funds.

249.   As a consignment agent or broker of watermelon, CH Robinson collected or received funds for or on behalf of Utopia Farms.

250.   Utopia Farms and CH Robinson accepted the Seeds from Plaintiff, when they knew or should have known they would fail to pay Plaintiff for said Seeds.

251.   On information and belief, Utopia Farms, Turner, and CH Robinson have converted the Seeds identified in Exhibit D, and used the Seeds to its own individual and collective use and benefit, benefitting these Defendants and harming Plaintiff in excess of $1,110,675.44.

252.   On information and belief, CH Robinson has used funds it collected or received on behalf of Utopia Farms from its sale of watermelon resulting from Plaintiff's unpaid converted Seeds, for the purpose of paying Utopia Farms' preexisting and undisclosed debts to CH Robinson instead of paying Plaintiff for the Seeds.

253.   The foregoing conversion of Seeds and use of the resulting funds in excess of $1,110,675.44 of sale proceeds benefits CH Robinson by repaying old debt owed to it by Utopia Farms and Turner.  Similarly, CH Robinson's use of funds in excess of $1,110,675.44 resulting from the converted Seeds reduces the amount of debt Utopia Farms and Turner owed CH Robinson.

254.   Turner failed to ensure that CH Robinson, as Utopia Farms' agent, made no use of the funds it collected on behalf of Utopia Farms other than to faithfully and promptly pay Plaintiff for the Seeds.

255.   Turner authorized or approved Utopia Farms and CH Robinson's conversion of Seeds, and failure or decision not to pay Plaintiff for the Seeds delivered to Utopia Farms.

256.   Turner failed to object to, counteract, obviate, or otherwise act to prevent Utopia Farms' and CH Robinson's conversion of Seeds and failure or decision not to pay Plaintiff.

257.   Utopia Farms, Turner, and CH Robinson's individual and collective conversion of Seeds and use of the funds CH Robinson collected or received from its sale of Utopia's 2020/2021 Florida watermelon crop for purposes other than paying Plaintiff (i.e., to pay CH Robinson and Utopia Farms' preexisting debts to CH Robinson) has directly and proximately caused injury to Plaintiff in an amount not less than $1,110,675.44, plus further interest.

## COUNT XIV

### UNJUST ENRICHMENT

### UTOPIA FARMS, TURNER, & CH ROBINSON

258.   Plaintiff re-alleges paragraphs 1 through 7 and 43 through 76 and 178 through 257 as though fully set forth herein.

259. Plaintiff sold Seeds to Utopia Farms, and Utopia Farms received Plaintiff's Seeds and, utilizing CH Robinson as its exclusive sales agent, sold the watermelon resulting from the Seeds to third parties, for which it has not paid Plaintiff.

260. CH Robinson collected and received all the sale proceeds from its sale of Utopia Farms' 2020/2021 Florida watermelon crop, which Utopia Farms grew, cultivated, produced, and harvested from Plaintiff's Seeds.

261. On information and belief, CH Robinson has used funds it collected or received on behalf of Utopia Farms from its sale of watermelon resulting from Plaintiff's unpaid Seeds, for the purpose of paying Utopia Farms preexisting and undisclosed debts to CH Robinson instead of paying Plaintiff for the Seeds.

262. On information and belief, Turner has profited personally from the funds that should have rightfully been paid to Plaintiff, but that were instead used to satisfy Utopia's outstanding debt to CH Robinson, thus benefitting Turner, Utopia, and CH Robinson while damaging Plaintiff.

263. No just cause exists in law or equity for Utopia Farms, Turner, or CH Robinson to receive or retain any portion of the funds CH Robinson received or collected from the sale of watermelon resulting from Plaintiff's Seeds for which these Defendants have not paid Plaintiff.

264.   Upon information and belief, CH Robinson received and collected more proceeds from the sale of Utopia Farms' 2020/2021 Florida watermelon crop than the amount of Plaintiff's unpaid invoice to Utopia Farms for Seeds.

265.   If Utopia Farms, Turner, and CH Robinson are allowed to continue to unjustly use and retain the funds rightfully belonging to Plaintiff, they will be unjustly enriched to the detriment of the Plaintiff.

266.   As a direct and proximate cause of the wrongful conversion of funds due to Plaintiff, Plaintiff has been damaged and Utopia Farms, Turner, and CH Robinson have been unjustly enriched in an amount not less than $1,110,675.44, plus further interest.

**WHEREFORE**, Plaintiff respectfully seeks the entry of an Order providing as follows:

A)   As to Count I, entering a Final Judgment in favor of Plaintiff and against Southeastern and CH Robinson, jointly and severally, in the current amount of not less than $250,405.66, plus further interest, incurred in this action;

B)   As to Count II, entering a Final Judgment in favor of Plaintiff and against Southeastern and CH Robinson, jointly and severally, in the current amount of not less than $250,405.66, plus further interest, incurred in this action, less any actual recovery on Count I;

C)     As to Count III, entering a Final Judgment in favor of Plaintiff and against CH Robinson in the current amount of not less than $250,405.66, plus further interest, incurred in this action, less any actual recovery on Counts I and II collectively;

D)     As to Count IV, entering a Final Judgment in favor of Plaintiff and against CH Robinson in the current amount of not less than $250,405.66, plus further interest, incurred in this action, less any actual recovery on Counts I, II, and III collectively;

E)     As to Count V, entering a Final Judgment in favor of Plaintiff and against CH Robinson in the current amount of not less than $250,405.66, plus further interest, incurred in this action, less any actual recovery on Counts I, II, III, and IV collectively;

F)     As to Count VI, entering a Final Judgment in favor of Plaintiff and against Southeastern, Sanders, Carter, and CH Robinson, jointly and severally, in the current amount of not less than $250,405.66, plus further interest, incurred in this action, less any actual recovery on Counts I, II, III, IV, and V collectively;

G)     As to Count VII, entering a Final Judgment in favor of Plaintiff and against Southeastern, Sanders, Carter, and CH Robinson, jointly and severally, in the current amount of not less than $250,405.66, plus further interest, incurred in this action, less any actual recovery on Counts I, II, III, IV, V, and VI collectively;

H)      As to Count VIII, entering a Final Judgment in favor of Plaintiff and against Utopia Farms and CH Robinson, jointly and severally, in the current amount of not less than $1,110,675.44, plus further interest, incurred in this action;

I)      As to Count IX, entering a Final Judgment in favor of Plaintiff and against Utopia Farms and CH Robinson, jointly and severally, in the current amount of not less than $1,110,675.44, plus further interest, incurred in this action, less any actual recovery on Count XIII;

J)      As to Count X, entering a Final Judgment in favor of Plaintiff and against Utopia Farms and CH Robinson, jointly and severally, in the current amount of not less than $1,110,675.44, plus further interest, incurred in this action, less any actual recovery on Counts XIII and IX collectively;

K)      As to Count XI, entering a Final Judgment in favor of Plaintiff and against CH Robinson in the current amount of not less than $1,110,675.44, plus further interest, incurred in this action, less any actual recovery on Counts XIII, IX, and X collectively;

L)      As to Count XIII, entering a Final Judgment in favor of Plaintiff and against Utopia Farms, Turner, and CH Robinson, jointly and severally, in the current amount of not less than $1,110,675.44, plus further interest, incurred in this action, less any actual recovery on Counts XIII, IX, X, and XI collectively;

M)     As to Count XIII, entering a Final Judgment in favor of Plaintiff and against Utopia Farms, Turner, and CH Robinson, jointly and severally, in the current amount of not less than $1,110,675.44, plus further interest, incurred in this action, less any actual recovery on Counts XIII, IX, X, XI, and XII collectively;

N)     As to Count XIV, entering a Final Judgment in favor of Plaintiff and against Utopia Farms, Turner, and CH Robinson, jointly and severally, in the current amount of not less than $1,110,675.44, plus further interest, incurred in this action, less any actual recovery on Counts XIII, IX, X, XI, XII, and XIII collectively; and

O)     Providing such other and further relief as the Court deems just, equitable, and proper upon consideration of this matter.


Dated: January 19, 2023.

COLEMAN TALLEY, LLP

By: /s/ Mark A. Gilbert
Mark A. Gilbert, Esq
Florida Bar No. 1013517
1 Independence Drive, Ste 3130
Jacksonville, FL 32202
Telephone: (904) 456-8949
Facsimile: (229) 333-0885
E-mail: mark.gilbert@colemantalley.com
Gregory M. Ohl, Esq.
Florida Bar No. 1039100
Telephone: (904) 456-8938
E-mail: gregory.ohl@colemantalley.com
*Local Counsel for Volunteer Ag. Products*

Of Counsel:

KLINOWSKI DAMIANO LLP
Jason R. Klinowski, Esq.

Alabama Bar No. asb-3856-t61s
(*Pro Hac Vice forthcoming*)
P.O. Box 43404
Birmingham, Alabama 35243
Telephone:(205) 644-8881
Facsimile:(205) 644-8489
E-mail: jklinowski@aglawyer.com
*Lead Counsel for Volunteer Ag. Products*

## VERIFICATION

I, Brock Lidy, am a Member/Manager for Volunteer Ag. Products, LLC, and am authorized to make this verification on its behalf. I have read the foregoing Verified Complaint, and I verify that, based upon my own knowledge, information, and belief, the facts stated therein are true. So far as this verification is made upon information which has been provided to me by others or upon my belief, I believe the information is true.

I have also reviewed all the documents attached to the Verified Complaint as exhibits, with respect to all such documents, I verify only that each referenced exhibit is a true and correct copy of the original document referenced therein.

Brock Lidy, Member/Manager
Of Volunteer Ag. Products LLC

Date: 1/18/2023

# Exhibit

# A

Volunteer Ag Products, LLC
PO Box 167
116 River Birch Lane
Greenfield, TN 38230

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/23/2020 | 958 |

**Bill To**

Southeastern Produce, LLC
Brian Sanders
CH Robinson
P.O. Box 881
LaBelle, FL 33975

**Ship To**

Mobley Plant World, LLC
FOR SOUTHEASTERN PRODUCE
1351 W. Cowboy Way
LaBelle, FL 33935

| P.O. Number | Terms | Due Date | Rep | Ship | Via | F.O.B. |
|-------------|-------|----------|-----|------|-----|--------|
| | 12/31 | 12/31/2020 | BDP | 7/23/2020 | UPS | |

| Quantity | Item Code | Description | Lot Number | Batch Number | Price Each | Amount |
|----------|-----------|-------------|------------|--------------|------------|--------|
| 237 | Joy Ride Wat... | Watermelons - sold as plant bundle | 103350981/01@5M | | 407.00 | 96,459.00 |
| 78.99921 | SSX8585 Wa... | Watermelons | 530209-00-01 | | 0.00 | 0.00 |
| 85 | Red Garnet W... | Watermelons | 2.330.768-2.330.977 | | 400.00 | 34,000.00 |
| 6 | Red Garnet W... | Watermelons | 2.330.768-2.330.977... | | 400.00 | 2,400.00 |
| 30 | SSX8585 Wa... | Watermelons | 526141-00-05@5M | | 0.00 | 0.00 |
| 0.33303 | SSX8585 Wa... | Watermelons | 530209-00-01 | | 0.00 | 0.00 |
| 17 | Joy Ride Wat... | Watermelons - overseed | 103350981/01@5M | | 0.00 | 0.00 |
| 140 | Extazy Water... | Watermelons | 104992@10M | | 408.00 | 57,120.00 |
| 102 | Extazy Water... | Watermelons | 91713@10M | | 408.00 | 41,616.00 |
| 80.66586 | Ace Plus Wat... | Watermelons | 524952-00-12 | | 0.00 | 0.00 |
| 15 | Joy Ride Wat... | Watermelons - overseed | 103600967@5M | | 0.00 | 0.00 |
| 14 | Red Garnet W... | Watermelons - overseed | 2.330.768-2.330.977... | | 0.00 | 0.00 |
| 33 | Extazy Water... | Watermelons - overseed | 91713@10M | | 0.00 | 0.00 |

Thank you for your business.

| | |
|--|--|
| **Total** | $231,595.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $231,595.00 |

| Phone # | E-mail | Web Site |
|---------|--------|----------|
| 731-514-6999 | volunteeragproducts@gmail.com | volunteeragproducts.com |

# Exhibit

# B

# Klinowski Damiano LLP
*Attorneys at Law*

## *Volunteer Ag Products, LLC v Southeastern Produce, LLC*

**Claim Amounts Calculated Through:** 1/17/2023
**PACA Creditor / Claimant:** Volunteer Ag Products, LLC
**Debtor:** Southeastern Produce LLC
**Payment Terms:** 0
**Interest Rate:** 4.25%
**Attorneys' Fees & Costs:** No

| Invoice Number | Date of Invoice or Shipment | Date Payment Due | No. of Days Past Due | Invoice Amount | Payments Received | Invoice Amount Due | Accrued Interest *(through date of chart)* | Outstanding Balance / PACA Trust Amount |
|---|---|---|---|---|---|---|---|---|
| 958 | 7/23/2020 | 2/28/2021 | 688 | $ 231,595.00 | $ - | $ 231,595.00 | $ 18,810.66 | $ 250,405.66 |
| | | | | $ 231,595.00 | $ - | $ 231,595.00 | $ 18,810.66 | $ 250,405.66 |

**Outstanding Principal Amount:** $ 231,595.00
**Interest:** $ 18,810.66
**Attorneys Fees & Costs: (est. through 09/30/21):** $ -
**Total :** $ 250,405.66

Exhibit

C

# PAYMENT AGREEMENT

This Agreement is entered on this ___16ᵗʰ___ day of ___Sept___, 202_0_, by and between Southeastern Produce LLC, PO Box 881, Labelle, FL 33975 and Volunteer Ag Products, LLC ("VAP"), located at 116 River Birch Lane, Greenfield, TN 38230.

**THE PARTIES AGREE AS FOLLOWS:**

Southeastern Produce LLC agrees to pay a deposit of $40,000 on Volunteer Ag Products Invoice #958 (see attachment) for watermelon plants By Sept 20, 2020 with the balance paid in full by CH Robinson ("CHR"), located at 14701 Charlson Road, Eden Prairie, MN 55347-5076. The amount will be deducted from any and all amounts payable from CHR to Southeastern Produce, beginning 30 days after first harvest (approximately Dec 20, 2020). If CHR is unable to pay VAP Invoice #958 in full by Jan 31, 2021, Southeastern Produce assumes full responsibility for and agrees to pay the remaining balance due to VAP by Feb 28, 2021.

X _____          Date: __9/16/20__

Brian Sanders
Southeastern Produce, LLC

X _____          Date: __9/16/20__

Rob Beets
Volunteer Ag Products, LLC

# Exhibit

# D

Volunteer Ag Products, LLC
PO Box 167
116 River Birch Lane
Greenfield, TN  38230

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/3/2021 | 1358 |

| Bill To | Ship To |
|---------|---------|
| Utopia Farms, LLC<br>PO Box 276<br>Myakka City, FL  34251 | Utopia Farms, LLC<br>Brian Turner<br>932 5th Ave. West<br>Palmetto, FL 34221-4818 |

| P.O. Number | Terms | Due Date | Rep | Ship | Via | F.O.B. |
|-------------|-------|----------|-----|------|-----|--------|
| | Due on receipt | 5/3/2021 | REB | | | |

| Quantity | Item Code | Description | Lot Number | Batch Number | Price Each | Amount |
|----------|-----------|-------------|------------|--------------|------------|--------|
| 60.884 | Joyride/Wing... | Watermelon Plant Bundle - del. 3/1/2021 | UF202125 | | 413.00 | 25,145.09 |
| 59.4 | Talca/Wingm... | Watermelon Plant Bundle - del. 3/1/2021 | UF202126 | | 413.00 | 24,532.20 |
| 29.947 | Talca/Wingm... | Watermelon Plant Bundle - del. 3/1/2021 | UF202127 | | 413.00 | 12,368.11 |
| 46.055 | Talca/Wingm... | Watermelon Plant Bundle - del. 3/1/2021 | UF202128 | | 413.00 | 19,020.72 |
| 27.8 | Excite/Wing... | Watermelon Plant Bundle - del. 3/2/2021 | UF202129 | | 420.00 | 11,676.00 |
| 3.771 | Excite/Wing... | Watermelon Plant Bundle - del. 3/2/2021 | UF202130 | | 420.00 | 1,583.82 |
| 71.646 | Joyride/Wing... | Watermelon Plant Bundle - del. 3/3/2021 | UF202131 | | 413.00 | 29,589.80 |
| 71.598 | Excite/Wing... | Watermelon Plant Bundle - del. 3/7/2021 | UF202132 | | 420.00 | 30,071.16 |
| 37.325 | Ladybelle/Wi... | Watermelon Plant Bundle - del. 3/7/2021 | UF202133 | | 390.00 | 14,556.75 |
| 51.978 | Joy_Ride Wat... | Watermelons Plant Bundle - del. 3/9/2021 | 103524614-0192907... | | 413.00 | 21,466.91 |
| 9.4 | Pollinator Wa... | Watermelon Plants - with Joyride | 91123 | | 0.00 | 0.00 |
| 9.346 | Captivation w... | Watermelons Plant Bundle - del. 3/12/2021 | 91176 | | 413.00 | 3,859.90 |
| 2.5 | Pollinator Wa... | Watermelon Plants - with Captivation | 91123 | | 0.00 | 0.00 |

Thank you for your business.

| Total | |
|-------|--|
| **Payments/Credits** | |
| **Balance Due** | |

| Phone # | E-mail | Web Site |
|---------|--------|----------|
| 731-514-6999 | volunteeragproducts@gmail.com | volunteeragproducts.com |

Volunteer Ag Products, LLC
PO Box 167
116 River Birch Lane
Greenfield, TN 38230

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/3/2021 | 1358 |

| Bill To | Ship To |
|---------|---------|
| Utopia Farms, LLC<br>PO Box 276<br>Myakka City, FL 34251 | Utopia Farms, LLC<br>Brian Turner<br>932 5th Ave. West<br>Palmetto, FL 34221-4818 |

| P.O. Number | Terms | Due Date | Rep | Ship | Via | F.O.B. |
|-------------|-------|----------|-----|------|-----|--------|
| | Due on receipt | 5/3/2021 | REB | | | |

| Quantity | Item Code | Description | Lot Number | Batch Number | Price Each | Amount |
|----------|-----------|-------------|------------|--------------|------------|--------|
| 68.273 | Ladybelle/Wi... | Watermelon Plant Bundle - del. 3/11/2021 | UF202134 | | 390.00 | 26,626.47 |

Thank you for your business.

| | |
|---|---|
| **Total** | $220,496.93 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $220,496.93 |

| Phone # | E-mail | Web Site |
|---------|--------|----------|
| 731-514-6999 | volunteeragproducts@gmail.com | volunteeragproducts.com |

Page 2

Volunteer Ag Products, LLC
PO Box 167
116 River Birch Lane
Greenfield, TN  38230

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/29/2021 | 1342 |

**Bill To**

Utopia Farms, LLC
PO Box 276
Myakka City, FL  34251

**Ship To**

Utopia Farms, LLC
Brian Turner
932 5th Ave. West
Palmetto, FL 34221-4818

| P.O. Number | Terms | Due Date | Rep | Ship | Via | F.O.B. |
|-------------|-------|----------|-----|------|-----|--------|
| | Due on receipt | 4/29/2021 | REB | | | |

| Quantity | Item Code | Description | Lot Number | Batch Number | Price Each | Amount |
|----------|-----------|-------------|------------|--------------|------------|--------|
| 30.472 | Joy_Ride/Sen... | Watermelon Plant Bundle - del. 2/1/2021 | UF202108 | | 413.00 | 12,584.94 |
| 70 | Joy_Ride/Sen... | Watermelon Plant Bundle - del. 2/3/2021 | UF202109 | | 413.00 | 28,910.00 |
| 34 | Joy_Ride/Sen... | Watermelon Plant Bundle - del. 2/3/2021 | UF202110 | | 413.00 | 14,042.00 |
| 4 | Joy_Ride/Sen... | Watermelon Plant Bundle - del. 2/3/2021 | UF202111 | | 413.00 | 1,652.00 |
| 1.229 | Joy_Ride/Sen... | Watermelon Plant Bundle - del. 2/3/2021 | UF202112 | | 413.00 | 507.58 |
| 123.016 | Joyride/Wing... | Watermelon Plant Bundle - del. 2/9/2021 | UF202113 | | 413.00 | 50,805.61 |
| 106.142 | Extazy/Wing... | Watermelon Plant Bundle - del. 2/11/2021 | UF202114 | | 420.00 | 44,579.64 |
| 30.663 | Joyride/Wing... | Watermelon Plant Bundle - del. 2/12/2021 | UF202115 | | 413.00 | 12,663.82 |
| 7.144 | Joyride/Wing... | Watermelon Plant Bundle - del. 2/15/2021 | UF202116 | | 413.00 | 2,950.47 |
| 13.495 | Joyride/Wing... | Watermelon Plant Bundle - del. 2/15/2021 | UF202124 | | 413.00 | 5,573.44 |
| 105.598 | Ladybelle/Wi... | Watermelon Plant Bundle - del. 2/15/2021 | UF202117 | | 390.00 | 41,183.22 |
| 33.437 | LaJoya/Wing... | Watermelon Plant Bundle - del. 2/18/2021 | UF202118 | | 412.00 | 13,776.04 |
| 81.818 | Joyride/Wing... | Watermelon Plant Bundle - del. 2/22/2021 | UF202119 | | 413.00 | 33,790.83 |

Thank you for your business.

| Total | |
|-------|--|
| **Payments/Credits** | |
| **Balance Due** | |

| Phone # | E-mail | Web Site |
|---------|--------|----------|
| 731-514-6999 | volunteeragproducts@gmail.com | volunteeragproducts.com |

Volunteer Ag Products, LLC
PO Box 167
116 River Birch Lane
Greenfield, TN  38230

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/29/2021 | 1342 |

| Bill To |
|---------|
| Utopia Farms, LLC<br>PO Box 276<br>Myakka City, FL  34251 |

| Ship To |
|---------|
| Utopia Farms, LLC<br>Brian Turner<br>932 5th Ave. West<br>Palmetto, FL 34221-4818 |

| P.O. Number | Terms | Due Date | Rep | Ship | Via | F.O.B. |
|-------------|-------|----------|-----|------|-----|--------|
|  | Due on receipt | 4/29/2021 | REB |  |  |  |

| Quantity | Item Code | Description | Lot Number | Batch Number | Price Each | Amount |
|----------|-----------|-------------|------------|--------------|------------|--------|
| 38.167 | LaJoya/Wing... | Watermelon Plant Bundle - del. 2/23/2021 | UF202120 |  | 412.00 | 15,724.80 |
| 60.653 | Talca/Wingm... | Watermelon Plant Bundle - del. 2/25/2021 | UF202121 |  | 413.00 | 25,049.69 |
| 75.122 | Extazy/Wing... | Watermelon Plant Bundle - del. 2/26/2021 | UF202122 |  | 420.00 | 31,551.24 |
| 30 | Extazy/Wing... | Watermelon Plant Bundle - del. 2/26/2021 | UF202123 |  | 420.00 | 12,600.00 |

Thank you for your business.

| | |
|---|---|
| **Total** | $347,945.32 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $347,945.32 |

| Phone # |
|---------|
| 731-514-6999 |

| E-mail | Web Site |
|--------|----------|
| volunteeragproducts@gmail.com | volunteeragproducts.com |

Volunteer Ag Products, LLC
PO Box 167
116 River Birch Lane
Greenfield, TN  38230

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/23/2021 | 1323 |

| Bill To |
|---------|
| Utopia Farms, LLC<br>PO Box 276<br>Myakka City, FL  34251 |

| Ship To |
|---------|
| Utopia Farms II, LLC<br>Brian Turner<br>932 5th Ave. West<br>Palmetto, FL 34221-4818 |

| P.O. Number | Terms | Due Date | Rep | Ship | Via | F.O.B. |
|-------------|-------|----------|-----|------|-----|--------|
| | Due on receipt | 4/23/2021 | REB | 4/23/2021 | Pick Up | |

| Quantity | Item Code | Description | Lot Number | Batch Number | Price Each | Amount |
|----------|-----------|-------------|------------|--------------|------------|--------|
| 17 | BioFence FL | Liquid Fertilizer | | | 175.00 | 2,975.00 |

Thank you for your business.

| | |
|---|---|
| **Total** | $2,975.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $2,975.00 |

| Phone # |
|---------|
| 731-514-6999 |

| E-mail |
|--------|
| volunteeragproducts@gmail.com |

| Web Site |
|----------|
| volunteeragproducts.com |

Volunteer Ag Products, LLC
PO Box 167
116 River Birch Lane
Greenfield, TN  38230

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/12/2021 | 1147 |

| Bill To | Ship To |
|---------|---------|
| Utopia Farms, LLC<br>PO Box 276<br>Myakka City, FL  34251 | Utopia Farms II, LLC<br>Brian Turner<br>932 5th Ave. West<br>Palmetto, FL 34221-4818 |

| P.O. Number | Terms | Due Date | Rep | Ship | Via | F.O.B. |
|-------------|-------|----------|-----|------|-----|--------|
| | Due on receipt | 3/12/2021 | REB | 1/31/2021 | | |

| Quantity | Item Code | Description | Lot Number | Batch Number | Price Each | Amount |
|----------|-----------|-------------|------------|--------------|------------|--------|
| 60 | Joy_Ride/Sen... | Watermelon Plant Bundle - del. 1/12/21 | UF202101 | | 413.00 | 24,780.00 |
| 10.261 | Joy_Ride/Sen... | Watermelon Plant Bundle - del. 1/12/21 | UF202102 | | 413.00 | 4,237.79 |
| 70 | Joy_Ride/Sen... | Watermelon Plant Bundle - del. 1/18/21 | UF202103 | | 413.00 | 28,910.00 |
| 0.392 | Joy_Ride/Sen... | Watermelon Plant Bundle - del. 1/18/21 | UF202104 | | 413.00 | 161.90 |
| 77.395 | Extazy/Wing... | Watermelon Plant Bundle - del. 1/25/21 | UF202105 | | 420.00 | 32,505.90 |
| 15.144 | Joy_Ride/Sen... | Watermelon Plant Bundle - del. 1/25/21 | UF202106 | | 413.00 | 6,254.47 |
| 30.663 | Extazy/Wing... | Watermelon Plant Bundle - del. 1/26/21 | UF202107 | | 420.00 | 12,878.46 |

Thank you for your business.

| | |
|--|--|
| **Total** | $109,728.52 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $109,728.52 |

| Phone # | E-mail | Web Site |
|---------|--------|----------|
| 731-514-6999 | volunteeragproducts@gmail.com | volunteeragproducts.com |

Volunteer Ag Products, LLC
PO Box 167
116 River Birch Lane
Greenfield, TN  38230

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/1/2020 | 1025 |

| Bill To | Ship To |
|---------|---------|
| Utopia Farms, LLC<br>PO Box 276<br>Myakka City, FL  34251 | Utopia Farms II, LLC<br>Brian Turner<br>932 5th Ave. West<br>Palmetto, FL 34221-4818 |

| P.O. Number | Terms | Due Date | Rep | Ship | Via | F.O.B. |
|-------------|-------|----------|-----|------|-----|--------|
| | Due on receipt | 12/1/2020 | REB | 11/24/2020 | | |

| Quantity | Item Code | Description | Lot Number | Batch Number | Price Each | Amount |
|----------|-----------|-------------|------------|--------------|------------|--------|
| 1,050 | SV6420PB P... | Peppers | 103705299@50M | | 88.00 | 92,400.00 |
| 950 | SV6420PB P... | Peppers - Discounted due to low germ rate | 103705299@50M | | 81.84 | 77,748.00 |

Thank you for your business.

| | |
|---|---|
| **Total** | $170,148.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $170,148.00 |

| Phone # | E-mail | Web Site |
|---------|--------|----------|
| 731-514-6999 | volunteeragproducts@gmail.com | volunteeragproducts.com |

Volunteer Ag Products, LLC
PO Box 167
116 River Birch Lane
Greenfield, TN  38230

# Invoice

| Date | Invoice # |
|------|-----------|
| 10/27/2020 | 1007 |

| Bill To |
|---------|
| Utopia Farms, LLC<br>PO Box 276<br>Myakka City, FL  34251 |

| Ship To |
|---------|
| Utopia Farms II, LLC<br>Brian Turner<br>932 5th Ave. West<br>Palmetto, FL 34221-4818 |

| P.O. Number | Terms | Due Date | Rep | Ship | Via | F.O.B. |
|-------------|-------|----------|-----|------|-----|--------|
| | Due on receipt | 10/27/2020 | REB | 10/26/2020 | | |

| Quantity | Item Code | Description | Lot Number | Batch Number | Price Each | Amount |
|----------|-----------|-------------|------------|--------------|------------|--------|
| 2,000 | SV6420PB P... | Peppers | 103705299@50M | | 88.00 | 176,000.00 |
| 210 | SV6420PB P... | Peppers - no charge due to germ rate | 103705299@50M | | 0.00 | 0.00 |

Thank you for your business.

| | |
|---|---|
| **Total** | $176,000.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $176,000.00 |

| Phone # |
|---------|
| 731-514-6999 |

| E-mail |
|--------|
| volunteeragproducts@gmail.com |

| Web Site |
|----------|
| volunteeragproducts.com |

# Exhibit

# E

# KLINOWSKI DAMINAO LLP

*Attorneys at Law*

## *Volunteer Ag Products, LLC v Utopia Farms, LLC*

**Claim Amounts Calcualted Through:** 1/17/2023
**PACA Creditor / Claimant:** Volunteer Ag Products. LLC
**Debtor:** Utopia Farms, LLC
**Payment Terms:** 0
**Interest Rate:** 4.25 % or .0116438% *FL Stat. 55.03*
**Attorneys' Fees & Costs:** No

| Invoice Number | Date of Invoice or Shipment | Date Payment Due | No. of Days Past Due | Invoice Amount | Payments Received | Invoice Amount Due | Accrued Interest *(through date of chart)* | Outstanding Balance Amount |
|---|---|---|---|---|---|---|---|---|
| 1358 | 5/3/2021 | 5/3/2021 | 624 | $ 220,496.93 | $ - | $ 220,496.93 | $ 16,243.27 | $ 236,740.20 |
| 1342 | 4/29/2021 | 4/29/2021 | 628 | $ 347,945.32 | $ - | $ 347,945.32 | $ 25,796.28 | $ 373,741.60 |
| 1323 | 4/23/2021 | 4/23/2021 | 634 | $ 2,975.00 | $ - | $ 2,975.00 | $ 222.67 | $ 3,197.67 |
| 1025 | 12/1/2020 | 12/1/2020 | 777 | $ 170,148.00 | $ - | $ 170,148.00 | $ 15,607.53 | $ 185,755.53 |
| 1007 | 10/27/2020 | 10/27/2020 | 812 | $ 176,000.00 | $ - | $ 176,000.00 | $ 16,871.56 | $ 192,871.56 |
| 1147 | 3/21/2021 | 3/21/2021 | 667 | $ 109,728.52 | $ - | $ 109,728.52 | $ 8,640.36 | $ 118,368.88 |
| | | | | $ 1,027,293.77 | $ - | $ 1,027,293.77 | $ 83,381.67 | $ 1,110,675.44 |

**Outstanding Principal Amount:** $ 1,027,293.77
**Interest:** $ 83,381.67
**Total :** $ 1,110,675.44

# Exhibit

# F

# PAYMENT AGREEMENT

This Agreement is entered on this ___29___ day of ___Apri_____ , 2021, by and between
Utopia Farms LLC PO Box 99, Palmetto, FL 34221 and Volunteer Ag Products, LLC ("VAP"), located at 116
River Birch Lane, Greenfield, TN 38230.

**THE PARTIES AGREE AS FOLLOWS:**

Utopia Farms LLC agrees to have the balance due on Volunteer Ag Products Invoices' _1147, 1342, 1358, 1323_
(see attachment) for watermelon plants paid in full by CH Robinson ("CHR"), located at 14701 Charlson
Road, Eden Prairie, MN 55347-5076 and/or Produce Pay Inc, located at 445 S Figueroa St-Suite 2580,
Los Angeles, CA 90071. The amounts will be deducted from any and all crop settlement amounts
payable by CHR/Produce Pay to Utopia Farms beginning 30 days after first harvest (approximately May
30, 2021). If CHR/Produce Pay is unable to pay VAP any Invoice in full, Utopia Farms assumes full
responsibility and agrees to pay the remaining balance due to VAP by Aug 30,2021.

X _____           Date: _5/22/2-6_

Brian Turner
Utopia Farms, LLC

X _____           Date: _4/29/21_

Rob Beets
Volunteer Ag Products, LLC

# PAYMENT AGREEMENT

This Agreement is entered on this _____19_____ day of ___November___, 2020, by and between Utopia Farms LLC, PO Box 99, Palmetto, FL 34221 and Volunteer Ag Products, LLC ("VAP"), located at 116 River Birch Lane, Greenfield, TN 38230.

## THE PARTIES AGREE AS FOLLOWS:

Utopia Farms LLC agrees to pay 50% on Volunteer Ag Products Invoice #1007, 1005 (see attachment) within 2 weeks of invoice date  with the balance paid in full by CH Robinson ("CHR"), located at 14701 Charlson Road, Eden Prairie, MN  55347-5076. The amount will be deducted from any and all crop settlement amounts payable by CHR to Utopia Farms beginning 30 days after first harvest.  Any and all invoices issued from Volunteer Ag Products to Utopia Farms LLC going forward will be held within the same accordance until one party breaks the agreement in writing.  If CHR is unable to pay VAP any Invoice in full, Utopia Farms assumes full responsibility and agrees to pay the remaining balance due to VAP.


X_____          Date: __11/19/2020_____

Brian Turner
Utopia Farms, LLC



X_____          Date: __11/19/20_____

Rob Beets
Volunteer Ag Products, LLC